## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re UNITE HERE DATA SECURITY INCIDENT LITIGATION | Lead Case No. 1:24-cv-01565-JSR |
| This Document Relates To:<br><br>ALL ACTIONS. | (Consolidated with Case No. 1:24-cv-01904) |

**DEFENDANT UNITE HERE'S MEMORANDUM OF LAW IN SUPPORT ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Richard W. Boone Jr.
Siobhán A. Mueller
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail: richard.boone@wilsonelser.com
E-mail: siobhan.mueller@wilsonelser.com

*Attorneys for Defendant UNITE HERE*

296421738v.4

## TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ....................................................................................1

II.  FACTUAL ALLEGATIONS ......................................................................................2

III. LEGAL STANDARDS ..............................................................................................5

IV.  ARGUMENT ..............................................................................................................6

    A.   Plaintiffs Lack Standing Under Article III of the U.S. Constitution ......................6

        1.   Plaintiffs Have Not Alleged Injury in Fact Sufficient for Standing ............7

        2.   Plaintiffs Have Not Alleged Traceability of Any Injury to the Incident ...10

        3.   Plaintiffs Lack Standing to Seek Declaratory and Injunctive Relief .........11

    B.   Plaintiffs' Claims Are Preempted by Federal Law ...............................................12

        1.   The Federal Duty of Fair Representation Preempts Plaintiffs' Claims .....13

        2.   LMRA 301 Further Preempts Plaintiffs Contractual Claims....................17

    C.   Each of Plaintiffs' Claims Fails as a Matter of Law .............................................18

        1.   Plaintiffs' Complaint Fails to Allege Actual Injury Sufficient to State a
            Claim Under Any of the Causes of Actions Plead....................................19

        2.   Plaintiffs' Complaint Fails to State a Claim for Negligence ....................20

        3.   Plaintiffs' Complaint Fails to State a Claim for Breach of Implied
            Contract.....................................................................................................21

        4.   Plaintiffs' Complaint Fails to State a Claim for Unjust Enrichment .........22

        5.   Plaintiffs' Complaint Fails to State a Claim for Breach of Confidence ....23

        6.   Plaintiffs Fail to State a Claim under the N.Y. Deceptive Trade Practices
            Act.............................................................................................................24

        7.   Plaintiffs' Complaint Fails to State a Claim for Declaratory Relief..........25

V.   CONCLUSION..........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Line Pilots Ass'n v. O'Neill*,
    499 U.S. 65 (1991)................................................................................................14, 15

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v.
Lockridge*,
    403 U.S. 274, 91 S. Ct. 1909, 29 L. Ed. 2d 473 (1971)...........................................15

*Anwar v. Fairfield Greenwich*, Ltd.,
    728 F. Supp. 2d 372, 432 (S.D.N.Y. 2010)............................................................20

*Arnold v. 1199 SEIU*,
    2009 U.S. Dist. LEXIS 116579 (S.D.N.Y. 2009), *aff'd*, 420 F. App'x 48 (2d
    Cir. 2011) ...............................................................................................................17, 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................5, 6, 22

*In re Barnes & Noble Pin Pad Litigation*,
    No. 12-CV-8617, 2013 U.S. Dist. LEXIS 125730 (N.D. Ill. 2013) ..........................8

*Barr v. United Parcel Serv., Inc.*,
    868 F.2d 36 (2d Cir. 1989)........................................................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................5, 6

*Bennett v. Spear*,
    520 U.S. 154 (1997)..................................................................................................10

*Berger v. Sonneland*,
    144 Wash. 2d 91, 26 P.3d 257 (2001).......................................................................24

*BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*,
    132 F.3d 824 (1st Cir. 1997) ..........................................................................14, 16, 17

*Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*,
    493 U.S. 67 (1989)....................................................................................................15

*Brumbaugh v. IBEW, Local Union No. 51*,
    No. 06-3302, 2007 U.S. Dist. LEXIS 56270 (C.D. Ill. Aug. 2, 2007)......................15

ii

*Bryant v. Am. Fed'n of Musicians of the US & Can. & Screen Actors Guild*,
  2015 U.S. Dist. LEXIS 155953 (S.D.N.Y. 2015) ....................................................14

*C.f. Avedisian v. Quinnipiac Univ.*,
  387 F. App'x 59 (2d Cir. 2010) ........................................................................18

*Cahoon v. Int'l Bhd. of Elec. Workers Loc. 261*,
  175 F. Supp. 2d 220 (D. Conn. 2001) ................................................................16

*In re Canon U.S.A. Data Breach Litig.*,
  2022 U.S. Dist. LEXIS 248197 (E.D.N.Y. 2022) ................................................24

*Carlsen v. GameStop, Inc.*,
  833 F.3d 903 (8th Cir. 2016) ............................................................................23

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*,
  580 F. Supp. 2d 273 (S.D.N.Y. 2008) ................................................................20

*Central States SE & SW Press Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
  504 F.3d 229 (2d Cir. 2007) ...............................................................................6

*Chanko v. Am. Broadcasting Cos. Inc.*,
  27 N.Y.3d 46, 29 N.Y.S.3d 879, 49 N.E.3d 1171 (2016) ....................................23

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .......................................................................................7, 9

*Condon v. Local 2944, United Steelworkers of Am.*,
  683 F.2d 590 (1st Cir. 1982) ............................................................................15

*Cox v NAP Constr. Co., Inc.*,
  10 N.Y.3d 592 (2008) ......................................................................................18

*De Medicis v Ally Bank*,
  2022 U.S. Dist. LEXIS 137337 (S.D.N.Y. 2022) ..............................................8, 11

*Debernardis v. IQ Formulations, LLC*,
  942 F.3d 1076 (11th Cir. 2019) ........................................................................19

*In re Equifax Customer Data Sec. Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021) ........................................................................11

*Estevez v Consol. Bus Tr., Inc.*,
  2016 U.S. Dist. LEXIS 79766 (S.D.N.Y. 2016) ..................................................18

*Free Holdings, Inc. v. McCoy*,
  No. 23-644, 2024 U.S. App. LEXIS 1045 (2d Cir. 2024) ...................................6, 7

iii

*George v. United States Postal Serv.*,
    No. 3:04cv1073 (PCD), 2006 U.S. Dist. LEXIS 20789 (D. Conn. Mar. 28,
    2006) ..................................................................................................................................14

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ..................................................................................24

*Gordon v. Chipotle Mexican Grill, Inc.*,
    344 F. Supp. 3d 1231 (D. Colo. 2018)...............................................................................23

*Hammond v Bank of NY Mellon Corp.*,
    2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. 2010) ..................................................................8

*Harry v Total Gas & Power N. Am., Inc.*,
    889 F3d 104 (2d Cir. 2018)................................................................................................19

*Int'l Bhd. of Elec. Workers v. Foust*,
    442 U.S. 42 (1979).......................................................................................................14, 16

*Irwin v. Jimmy John's Franchise, LLC*,
    175 F. Supp. 3d 1064 (C.D. Ill. 2016) ..............................................................................23

*Jerusalem v. Mass. Mut. Life Ins. Co.*,
    2022 U.S. Dist. LEXIS 194206 (E.D.N.Y. 2022)...............................................................25

*Johnson v. United Food & Commercial Workers Int'l Union Local No. 23*,
    828 F.2d 961 (3d Cir. 1987)...............................................................................................15

*Kane v. Univ. of Rochester*,
    2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. 2024) ...............................................................24

*Keach v. BST & Co. CPAs, LLP*,
    2021 NY Slip Op 50273(U), 71 Misc. 3d 1204(A), 142 N.Y.S.3d 790 (Sup.
    Ct.) .....................................................................................................................................12

*Labajo v. Best Buy Stores, L.P.*,
    478 F. Supp. 2d 523 (S.D.N.Y. 2007)................................................................................22

*Lingle v. Norge Div. of Magic Chef*,
    486 U.S. 399 (1988)...........................................................................................................17

*In re Livent Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)..................................................................................2

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................................................................5, 6, 7, 10

iv

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*,
   19 F.4th 58 (2d Cir. 2021) ...................................................................................10

*Maddox v. Bank of N.Y. Mellon Tr. Co.*,
   No. 15-CV-01053(RJA)(JJM), 2017 U.S. Dist. LEXIS 13424 (W.D.N.Y.
   2017) ...................................................................................................................10

*Madison v. Motion Picture Set Painters & Sign Writers Loc. 729*,
   132 F. Supp. 2d 1244 (C.D. Cal. 2000) ...............................................................16

*Maynard v. Revere Copper Prods., Inc.*,
   773 F.2d 733 (6th Cir. 1985) ...............................................................................15

*McLoughlin v. People's United Bank, Inc.*,
   No. 3:08-cv-00944(VLB), 2009 U.S. Dist. LEXIS 78065 (D. Conn. Aug. 31,
   2009) ...................................................................................................................19

*McMorris v Carlos Lopez & Assoc.*,
   LLC, 995 F.3d 295 (2d Cir 2021) .......................................................................8, 9

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ............................................................................................25

*Mount v. PulsePoint, Inc.*,
   2016 U.S. Dist. LEXIS 112315 (S.D.N.Y. 2016) ...............................................19

*Nationwide Life Ins. Co. v. Haddock*,
   460 F. App'x 26 (2d Cir. 2012) ...........................................................................12

*Nebraskaland, Inc. v. Sunoco, Inc.*,
   2010 U.S. Dist. LEXIS 129013 (E.D.N.Y. 2010) ...............................................25

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)................................................................................11

*Pappas v. Tzolis*,
   20 N.Y.3d 228 (2012) ..........................................................................................18

*In re Parmalat Sec. Litig.*,
   375 F. Supp. 2d 278 (S.D.N.Y. 2005)..................................................................21

*Pena v. British Airways, PLC (U.K.)*,
   18-CV-6278, 2020 U.S. Dist. LEXIS 60361 (E.D.N.Y. 2020) ...............................9

*Peterson v. Air Line Pilots Ass'n, Int'l*,
   759 F.2d 1161 (4th Cir. 1985) .............................................................................15

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012) .......................................................................................8

*Richardson v. United Steelworkers of Am.*,
  864 F.2d 1162 (5th Cir. 1989) .......................................................................................15

*Riggs v. Albuquerque*,
  916 F.2d 582 (10th Cir. 1990) .......................................................................................11

*Ruisi v. NLRB*,
  856 F.3d 1031 (D.C. Cir. 2017) .....................................................................................16

*Saunders v. Hankerson*,
  312 F. Supp. 2d 46 (D.D.C. 2004) .................................................................................17

*Schafer v Direct Energy Servs., LLC*,
  845 F App'x 81 (2d Cir. 2021) .........................................................................................2

*Schwartz v. Gilbert*,
  No. 279992, 2009 Mich. App. LEXIS 354 (Ct. App. Feb. 19, 2009).............................24

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
  45 F. Supp. 3d 14 (D.D.C. 2014) ..............................................................................8, 11

*Scott v. Fields*,
  92 A.D.3d 666 (N.Y. App. Div. 2012) ...........................................................................18

*Shafran v Harley-Davidson*,
  2008 U.S. Dist. LEXIS 22494 (S.D.N.Y. 2008).....................................................8, 9, 19

*Simon v Eastern Ky. Welfare Rights Organization*,
  426 U.S. 26 (1976).........................................................................................................6

*Spellacy v. Airline Pilots Ass'n-Int'l*,
  156 F.3d 120 (2d Cir. 1998)...........................................................................................15

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)......................................................................................................5, 6

*Steven v Carlos Lopez & Assoc., LLC*,
  422 F. Supp. 3d 801 (S.D.N.Y. 2019)..............................................................................8

*Storm v Paytime, Inc.*,
  90 F. Supp. 3d 359 (M.D. Pa. 2015) ..............................................................................12

*Tate v. EyeMed Vision Care, LLC*,
  No. 1:21-CV-36, 2023 U.S. Dist. LEXIS 175840 (S.D. Ohio Sept. 29, 2023) ...............22

296421738v.4

*Thomas v. National Ass'n of Letter Carriers*,
    225 F.3d 1149 (10th Cir. 2000) ............................................................................15

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ...........................................................................................11

*Troy v. A.B.A.*,
    No. 23-CV-03053 (NGG) (VMS), 2024 U.S. Dist. LEXIS 78206 (E.D.N.Y.
    Apr. 30, 2024) .................................................................................................22, 25

*United Ass'n of Journeymen & Apprentices v. Loc.*,
    452 U.S. 615 (1981) ...............................................................................................17

*Vaca v. Sipes*,
    386 U.S. 171 (1967) ...............................................................................................14

*Vaughn v. Air Line Pilots, Ass'n, Int'l*,
    604 F.3d 703 (2d Cir. 2010)....................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...............................................................................................12

*Wallace v. Health Quest Sys.*,
    20-CV-545, 2021 U.S. Dist. LEXIS 54557 (S.D.N.Y. 2021).........................9, 21, 24

*Wallace v Health Quest Sys.*,
    2021 US Dist LEXIS 54557 (S.D.N.Y. 2021) .........................................................19

*Walsh v. IBEW Local 503*,
    62 F. Supp. 3d 300 (S.D.N.Y. 2014).................................................................14, 16

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................................5

*In re Waste Mgmt. Data Breach Litig.*,
    2022 U.S. Dist. LEXIS 32798 (S.D.N.Y. 2022)................................................21, 23

*Welborn v. IRS*,
    218 F. Supp. 3d 64 (D.D.C. 2016) ..........................................................................10

*Whalen v. Michael Stores Inc.*,
    153 F. Supp. 3d 577 (E.D.N.Y. 2015) ................................................................9, 23

*Whalen v. Michaels Stores, Inc.*,
    689 F. App'x 89 (2d Cir. 2017) .......................................................................7, 8, 9

*Willey v. J.P. Morgan Chase, N.A.*,
    2009 U.S. Dist. LEXIS 57826 (S.D.N.Y. 2009).......................................................20

*Wilson v. Northwestern Mutual Insurance Co.,*
  625 F.3d 54 (2d Cir. 2010)........................................................................................19

*Wooddell v. Int'l Bd. of Elec. Workers, Loc. 71,*
  502 U.S. 93 (1991)....................................................................................................17

*Young v. U.S. Dep't of Justice,*
  882 F.2d 633 (2d Cir. 1989)......................................................................................23

*Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC,*
  736 Fed. Appx. 274 (2d Cir. 2018)............................................................................21

**Statutes**

15 U.S.C. § 45(a)(1).....................................................................................................20

15 U.S.C. § 45(a)(2).....................................................................................................20

28 U.S.C. § 2201(a)......................................................................................................25

29 U.S.C. § 159.............................................................................................................14

29 U.S.C. § 185.............................................................................................................17

LMRA § 301.........................................................................................13, 14, 17, 18, 21

NLRA § 9.................................................................................................................12, 14

NYGBL § 349(a).......................................................................................................4, 24

**Rules**

Fed. R. Civ. Proc. 8......................................................................................................21

Fed. R. Civ. Proc. 12(b)(1)...................................................................................1, 5, 6

Fed. R. Civ. Proc. 12(b)(6)...................................................................................1, 5, 6

Fed. R. Civ. Proc. 23(b)(2)...............................................................................12, 25

296421738v.4

Defendant UNITE HERE respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Consolidated Class Action Complaint (the "Complaint") (Dkt. No. 17), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    PRELIMINARY STATEMENT

UNITE HERE is a nonprofit labor union,[1] organized under and governed by the federal National Labor Relations Act of 1935 ("NLRA") and Labor Management Relations Act of 1947 ("LMRA").  It exists solely for the benefit of workers, including its more than 300,000 members.[2]  Plaintiffs are each alleged to be a "union member" of UNITE HERE.  (Dkt. 17, ¶¶ 90, 104).  Accordingly, their relationship with UNITE HERE is governed by federal labor laws.

UNITE HERE's members work in the hotel, gaming, food service, manufacturing, textile, distribution, laundry, transportation, and airport industries.  As a labor union, UNITE HERE represents those workers in collective bargaining.  Additionally, although UNITE HERE does not provide health services, its members participate in non-profit, multi-employer health benefit plans, established and maintained pursuant to a collective bargaining agreement.[3]  Any and all private information which UNITE HERE might possess is incidental to those activities, which are also governed by federal labor laws, as well as employee benefit laws.[4]

As alleged in Plaintiffs' Complaint, "unusual activity was detected on some of [UNITE HERE's] computer systems on October 20, 2023."  (*Id.*, ¶ 5).  "In response, Defendant launched an investigation that revealed that an unauthorized party had access to certain files that contained sensitive union member information."  (*Id.*).  UNITE HERE then provided notice of the data security incident (the "Incident") to the relevant state authorities and to any "individuals whose

---

[1] UNITE HERE is a nonprofit 501(c)(5) organization.

[2] UNITE HERE represents workers throughout the United States and Canada.

[3] These health benefits plans are for the sole and exclusive benefit of the covered employees, and jointly governed by a board of employer and union representatives.

[4] These include the Employee Retirement Income Security Act of 1974 ("ERISA").

296421738v.4

Private Information was compromised as a result of the hacking incident." (*Id.*, ¶¶ 3-4). Although it does not appear that either Plaintiff accepted it, UNITE HERE also offered free credit monitoring and protection to all impacted individuals.

Shortly after receiving notice of the Incident, Plaintiffs filed suit against UNITE HERE, based solely on the faulty proposition that, if someone is hacked, they must not have had reasonable data security measures in place. Unsurprisingly, Plaintiffs do not allege any facts to support that theory, which is essentially one of strict liability for any data breach. Additionally, aside from some fraudulent charges to Plaintiff Conway's Chime accounts,[5] which were in no way connected to any personal information exposed in the Incident, Plaintiffs do not allege identity theft or any other concrete injury resulting from the Incident. Plaintiffs allege only speculative harm, including lost value of personal information, invasion of privacy, increased risk of future harm, and inconvenience. Such allegations are insufficient as a matter of law.

For these reasons, which are discussed in greater detail below, Plaintiffs cannot satisfy the basic constitutional requirements of standing, their claims are preempted by federal labor laws, and Plaintiffs have failed to state any claim upon which relief can be granted. As a result, Plaintiffs' Complaint must be dismissed, in its entirety and with prejudice.

## II.    FACTUAL ALLEGATIONS[6]

As set forth in the Complaint, UNITE HERE is a labor union based in New York "that serves hundreds of thousands of workers throughout the United States and Canada." (Dkt. 17,

---

[5] Chime is a technology company that supplies a mobile application and other online services to facilitate banking, credit, and debit card services provided by others.

[6] While UNITE HERE disputes many of Plaintiffs' factual allegations, they are accepted as true here, except where "contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-406 (S.D.N.Y. 2001). In addition, the Court may consider documents referred to in the Complaint even if plaintiffs fail to attach them, "if the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Schafer v Direct Energy Servs., LLC*, 845 F App'x 81, 82 (2d Cir. 2021).

2

¶ 2; *see also* ¶ 25).  Plaintiffs allege that "[a]s a condition of receiving union representation and other benefits, UNITE HERE requires that its union members entrust it with highly sensitive personal and health information."  (*Id.*, ¶ 26).  The conditions of membership in UNITE HERE are, of course, set forth in UNITE HERE's Constitution (Ex. 1, pp. 52-55),[7] the interpretation of which is governed by the LMRA.  Plaintiffs further claim that, "[i]n the ordinary course of receiving service from UNITE HERE, Plaintiffs and Class Members were required to provide their Private Information to Defendant."  (Dkt. 17, ¶ 26).  Thus, Plaintiffs concede that their providing of Personal Information to UNITE HERE is inexorably tied to its role as a labor union.

Although the Complaint speculates otherwise, UNITE HERE has at all relevant times maintained robust cyber defenses.  Notwithstanding, on October 20, 2023, UNITE HERE's computer systems were accessed by an unauthorized actor (the aforementioned "Incident").  (*Id.*, ¶¶ 1, 5, 31).  As a result, that actor potentially gained access to union members' "highly sensitive Private Information" (*id.*, ¶ 32), which allegedly included "UNITE HERE union members' personally identifiable information ('PII') and protected health information ('PHI'), including their names, Social Security numbers, dates of birth, and medical information" (*id.*, ¶ 1).  On February 23, 2024, UNITE HERE notified the relevant authorities of the Incident, including the Maine Office of the Attorney General (*id.*, ¶ 3), and also "sent out data breach letters (the 'Notice') to individuals whose Private Information was compromised as a result of the hacking incident" (*id.*, ¶ 4; *see also id.*, ¶ 33).  The first of these boilerplate lawsuits against UNITE HERE was filed on March 13, 2024, just two weeks later.

Consistent with the generic nature of their allegations, Plaintiffs make no attempt to identify what UNITE HERE did wrong, beyond simply being the victim of an attack.  The

---

[7]  The UNITE HERE Constitution is publicly available at https://unitehere.org/wp-content/uploads/2019-UNITE-HERE-Constitution.pdf.

296421738v.4

Complaint includes only conclusory allegations, such as that UNITE HERE "fail[ed] to properly secure and safeguard Plaintiffs' [Personal Information]" (*id.*, ¶1) and that UNITE HERE "failed to properly monitor and implement security practices with regard to the computer network and systems that housed the Private Information" (*id.*, ¶ 12).[8]  Plaintiffs never explain what UNITE HERE might have done differently.  Rather, Plaintiffs' theory is that, because the Incident occurred, UNITE HERE's security measures must not have been reasonable.

Additionally, Plaintiffs do not identify any concrete injuries that they suffered as a result of the Incident.  Plaintiffs allege only that they "have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information."  (*Id.*, ¶ 9; *see also id.*, ¶¶ 69, 89, 93-94, 98, 102, 110, 116, 121).[9]  Plaintiffs purport to represent a nationwide class of "[a]ll individuals in the United States who had Private Information accessed and/ or acquired as a result of the Data Breach, including all who were sent a notice of the Data Breach."  (*Id.*, ¶ 13).  Plaintiffs further purport to assert claims against UNITE HERE for: (i) negligence; (ii) breach of implied contract; (iii) unjust enrichment; (iv) breach of confidence; (v) violation of the New York Deceptive Trade Practices Act, New York Gen. Bus. Law ("NYGBL") § 349; and

---

[8] (*See also, id.* ¶¶ 46 ("Defendant failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being compromised."), 48 ("UNITE HERE failed … to take adequate cybersecurity measures to prevent the Data Breach from occurring.")).

[9] Specifically, Plaintiff Puller-Soto alleges her injuries include:  "(a) damage to and diminution in the value of her PII and PHI, a form of property that Defendant obtained from Plaintiff Puller-Soto; (b) violation of her privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now faces."  (*Id.*, ¶ 102).  Plaintiff Conway alleges her injuries include:  "(i) invasion of privacy; (ii) theft of her Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to her Private Information."  (*Id.*, ¶ 110).

4

(vi) declaratory judgment.  For the reasons set forth below, Plaintiffs lack standing to assert those claims, which are also preempted by federal labor laws.  Even if proper, each of these claims would also fail as a matter of law.

### III.    LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a Court to dismiss a claim on motion for lack of subject matter jurisdiction.  Standing is a threshold issue, and a plaintiff may not proceed without it.  *See Warth v. Seldin,* 422 U.S. 490, 498 (1975) (explaining that Article III standing is "the threshold question in every federal case, determining the power of the court to entertain the suit").  In order to show the "irreducible constitutional minimum of standing . . . [t]he plaintiff[s] must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  For standing to exist, plaintiffs must allege "an injury in fact" that is actual or imminent, not conjectural or hypothetical. *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To be concrete, an injury "must actually exist." *Id.* at 340.

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Facial plausibility" requires factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  They "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Accordingly, "bare assertions … amount[ing] to nothing more

than a 'formulaic recitation of the elements' … are not entitled to an assumption of truth." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555).

## IV.    ARGUMENT

For the reasons set forth below, Plaintiffs' Complaint should be dismissed, in its entirety and with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A.    Plaintiffs Lack Standing Under Article III of the U.S. Constitution

"A litigant invoking federal jurisdiction must demonstrate '[s]tanding to sue,' a requirement 'rooted in the traditional understanding' of what it means to assert a 'case or controversy' under Article III of the Constitution." *Free Holdings, Inc. v. McCoy*, No. 23-644, 2024 U.S. App. LEXIS 1045, at *2-3 (2d Cir. 2024) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo*, 578 U.S. at 338 and *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 US at 561. Additionally, each of the "named plaintiffs who represent a class must allege and show that they have personally been injured not that injury has been suffered by some other, unidentified members of the class … which they purport to represent." *Simon v Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n 20 (1976).[10]

Here, Plaintiffs' Complaint is devoid of any plausible allegations that Plaintiffs were victims of identity theft or fraud as a result of the Incident, that there was any misuse of Plaintiffs' personal information, or that Plaintiffs incurred any out-of-pocket expenses or

---

[10] *See also* C*entral States SE & SW Press Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 241 (2d Cir. 2007) ("For every named defendant there must be at least one named plaintiff who can assert a claim directly against the defendant.").

unreimbursed charges. Instead, Plaintiffs rely on conclusory allegations of harm and various articles discussing the rise of cyberattacks and the theoretical impact on victim organizations and individuals. (Dkt. 17, ¶¶ 70-84; fn. 13-14). Additionally, Plaintiffs speculate as to ***potential*** injuries they ***might*** face, including: (1) increased risk of future identity theft; (2) lost time and money expended to mitigate the threat of identity theft; (3) diminished value of their personal information; (4) diminished value of the services they received from UNITE HERE; and (5) increased anxiety for their loss of privacy. (*Id.*, ¶¶ 9, 110, 114, 123, 166, 201). None of these is sufficient to confer standing.

### 1.    Plaintiffs Have Not Alleged Injury in Fact Sufficient for Standing

"An injury in fact is 'an invasion of a legally protected [interest] which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Free Holdings*, 2024 U.S. App. LEXIS 1045, at *3 (quoting *Lujan*, 504 U.S. at 560). Accordingly, "to establish Article III standing, a future injury must be 'certainly impending,' rather than simply speculative." *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 90 (2d Cir. 2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)). "[A] 'theory of standing which relies on a highly attenuated chain of possibilities does not satisfy the requirement that threatened injury must be certainly impending.'" *Id.* (quoting *Clapper*, 569 U.S. at 1148).

Plaintiffs have not alleged, beyond conclusory statements, that they suffered any concrete and particularized injury as a result of the Incident. Rather, Plaintiffs claim that they suffered an "***increased risk of harm***, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns and insurance claims filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of

identity theft." (Dkt. 17, ¶ 121 (emphasis added)).[11]  Such allegations are insufficient to confer

standing.  *See, e.g., McMorris v Carlos Lopez & Assoc.*, LLC, 995 F.3d 295, 303-304 (2d Cir

2021) (asserted injury of future identity theft was "too speculative" to show standing).[12]

     Plaintiff Conway's allegations of fraudulent charges on her Chime accounts[13] do not

confer standing for the simple fact that they have no plausible connection to the Incident.  The

breach is not alleged to have involved any person's bank account information or credit or debit

card numbers.  *See, e.g., De Medicis v Ally Bank*, 2022 U.S. Dist. LEXIS 137337, at *19

(S.D.N.Y. 2022) ("Generally, to prove that a data breach caused identity theft, the pleadings

must include allegations of a nexus between the two instances beyond allegations of time and

sequence" (quoting *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012)).[14]  Those

allegations are also insufficient because Conway does not allege that she was personally liable

for any fraudulent charges.  *See, e.g., Whalen*, 689 F App'x at 90-91 (affirming dismissal for lack

of standing, even though fraudulent purchases were attempted on plaintiff's credit card, because

she did not allege she actually had to pay any of the fraudulent charges).[15]

---

[11] (*See also id.*, ¶¶ 13, 69, 98, 102, 124-25).

[12] *See also Steven v Carlos Lopez & Assoc., LLC,* 422 F. Supp. 3d 801, 805 (S.D.N.Y. 2019) ("courts have concluded that the risk of identity theft is too speculative to support Article III standing"); *Hammond v Bank of NY Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *6-7 (S.D.N.Y. 2010) ("For the reasons set forth below, this Court concludes that Plaintiffs here do not have Article III standing (i.e., there is no 'case or controversy') because they claim to have suffered little more than an increased risk of future harm from the loss (whether by accident or theft) of their personal information"); *Shafran v Harley-Davidson*, 2008 U.S. Dist. LEXIS 22494, at *2 (S.D.N.Y. 2008) ("an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy").

[13] Plaintiff Conway alleges that she experienced fraudulent charges of approximately $242 to her Chime checking account in October 2023 and $100 to her Chime credit card in February 2024. (Dkt. 17, ¶¶ 111-112).

[14] *See also In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 32 (D.D.C. 2014) (Plaintiffs "proffer no plausible explanation for how the thief would have acquired their banking information.").

[15] *See also In re Barnes & Noble Pin Pad Litigation*, No. 12-CV-8617, 2013 U.S. Dist. LEXIS

---

Plaintiffs' vague allegations of "lost time" in dealing with the Incident and speculation that they "may incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees" (Dkt. 17, ¶¶ 109-110, 122-123) also do not confer standing. "Courts have uniformly ruled that the time and expense of credit monitoring to combat an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy." *Shafran v. Harley-Davidson, Inc.*, 2008 U.S. Dist. LEXIS 22494, at *7 (S.D.N.Y. 2008).[16]   Additionally, "plaintiffs 'cannot manufacture standing' through credit monitoring." *Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 581 (E.D.N.Y. 2015) (quoting *Clapper*, 568 U.S. 416).[17]   That is particularly true here, where UNITE HERE offered free credit monitoring and identity theft protection services to all impacted persons (*See* Dkt. 17, ¶ 93), but there is no allegation that either Plaintiff took advantage of that offer.

Courts have consistently rejected Plaintiffs' theory of injury based on conclusory allegations of "diminished value of Private Information." (Dkt. 17, ¶¶ 110, 133, 201, 225). *See, e.g., Wallace v. Health Quest Sys.*, 20-CV-545, 2021 U.S. Dist. LEXIS 54557 (S.D.N.Y. 2021) (no injury where plaintiffs fail to indicate how their private information diminished in value).[18] Courts have also uniformly rejected Plaintiffs' assertion that they lost the "benefit of the bargain they made with UNITE HERE" (Dkt. 17, ¶ 69) as a basis for standing.  *See, e.g., Whalen*, 153 F. Supp. 3d at 581 (rejecting plaintiff's benefit of the bargain theory because they failed to allege a

---

125730, *15-16 (N.D. Ill. 2013) (court dismissed the complaint for lack of injury despite plaintiff's allegation of having a fraudulent charge on her credit card because she failed to plead that she had an "unreimbursed charge on her credit card").

[16] *See also, e.g., McMorris*, 995 F.3d 295 at 303 (rejecting injury based on mitigation of unknown future loss, finding it to be a "speculative threat").

[17] *Affirmed* at *Whalen*, 689 F. App'x 89.

[18] *See also Pena v. British Airways, PLC (U.K.)*, 18-CV-6278, 2020 U.S. Dist. LEXIS 60361, at *7-8 (E.D.N.Y. 2020) (no injury where plaintiff did not allege he was offered or had to forego any opportunity to profit from the sale of his personal information).

different price charged to customers for purpose of security services).   That assertion is particularly nonsensical because Plaintiffs are not consumers; they are members of a labor union organized for the benefit of workers.   Plaintiffs did not make purchases, they paid union dues.

Lastly, Plaintiffs' unsupported allegations that the Incident has caused them "to suffer fear, anxiety, and stress" (Dkt. 17, ¶¶ 101, 114) do not confer standing.   The Complaint offers no reason why the Incident has caused the Plaintiffs fear, anxiety, and stress.   "A perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing."   *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 (2d Cir. 2021).   Moreover, as the Second Circuit has noted, "[e]ven if it were sufficient, 'it is extremely unlikely that such an allegation would be typical of the class.'"   *Id.* (quoting *Maddox v. Bank of N.Y. Mellon Tr. Co.*, No. 15-CV-01053(RJA)(JJM), 2017 U.S. Dist. LEXIS 13424, at *8 n.5 (W.D.N.Y. 2017)).

### 2.    Plaintiffs Have Not Alleged Traceability of Any Injury to the Incident

Traceability, the second element of standing, is as critical as an injury in fact. Traceability requires "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560.   The harm alleged must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."   *Bennett v. Spear*, 520 U.S. 154, 167 (1997).   Accordingly, in the data breach context, a number of courts have found that "to demonstrate causation, Plaintiffs must put forward facts showing that their injuries can be traced to the specific data incident of which they complain and not to any previous theft or data loss incident."   *Welborn v. IRS*, 218 F. Supp. 3d 64, 79 (D.D.C. 2016) (noting that, at a minimum, plaintiffs must allege facts indicating the information stolen

from defendant is the same type of information used to commit their injuries).[19]

Those courts have found that increased scrutiny of the traceability element of standing is necessary in light of the growing likelihood that a particular plaintiff's data would have already been exposed in another or several other data breaches.  For example, the Equifax data breach included the full Social Security numbers, names, dates of birth, and other personal information of 147.9 million people, which equates to about 45 percent of the U.S. population.[20]  Thus, there is a good chance that one or both Plaintiffs has already had her personal information exposed. Yet, Plaintiffs allege nothing to suggest any traceability of their alleged "injuries" to the Incident. Certainly neither Plaintiff alleges that the Incident is the only data breach that may have involved their information or about which they have received a notification.

### 3.    Plaintiffs Lack Standing to Seek Declaratory and Injunctive Relief

In addition to money damages, Plaintiffs seek injunctive and declaratory relief, such as improvements to UNITE HERE's systems.  "[A] plaintiff seeking prospective relief must show more than past harm or speculative future harm." *Riggs v. Albuquerque*, 916 F.2d 582, 586 (10th Cir. 1990).  "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  The threat of future harm must be "sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2198 (2021).

Plaintiffs allege a single data security incident at UNITE HERE (*i.e.*, the Incident) and

---

[19] *See also De Medicis*, 2022 U.S. Dist. LEXIS 137337, at *22 (requiring plausible allegations of a "non-temporal nexus" between the data breach and the alleged injury); *SAIC*, 45 F. Supp. 3d at 32 ("In a society where around 3.3% of the population will experience some form of identity theft - regardless of the source - it is not surprising that at least five people out of a group of 4.7 million happen to have experienced some form of credit or bank-account fraud.").
[20] *See In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1274 (11th Cir. 2021).

include no factual allegations of a credible threat that another attack on the union by cybercriminals is **imminent**.  Unfortunately, every entity is now a potential victim of a cyber attack.[21]  Plaintiffs do not allege how injunctive relief could hope to prevent such an attack.  Nor do they explain how they could be harmed in the event of such an attack, given Plaintiffs' claim that their data has already been irreparably compromised.  Plaintiffs do not allege that they plan to provide additional, different data to UNITE HERE in the future.  Accordingly, Plaintiffs lack standing to seek injunctive relief.

Moreover, even if they had standing, Plaintiffs' class injunctive relief claims must be dismissed.  "Rule 23(b)(2) does not authorize class certification when—despite the suitability of generalized injunctive or declaratory relief—'each class member would [also] be entitled to an individualized award of monetary damages.'"  *Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 28-29 (2d Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011)).  "Thus, a class complaint alleging numerous individual claims for monetary relief may not be certified under Rule 23(b)(2), 'at least where … the monetary relief is not incidental to the injunctive or declaratory relief.'"  *Id.* (quoting *Wal-Mart*, 564 U.S. at 360).

## B.    Plaintiffs' Claims Are Preempted by Federal Law

Plaintiffs' claims, which are founded entirely under state common and statutory law, are barred by federal labor laws in two ways.  The federal duty of fair representation, which is derived from the exclusive grant of bargaining authority to unions under Section 9(a) of the NLRA, preempts Plaintiffs' state law claims because they seek to impose some other duty on the

---

[21] *See, e.g., Keach v. BST & Co. CPAs, LLP*, 2021 NY Slip Op 50273(U), ¶ 7, 71 Misc. 3d 1204(A), 142 N.Y.S.3d 790 (Sup. Ct.) ("The ubiquitous nature of data breaches further counsels in favor of a cautious approach to standing. More than six years ago, a federal Judge addressing a data breach lawsuit observed: 'There are only two types of companies left in the United States, according to data security experts: those that have been hacked and those that don't know they've been hacked.'" (quoting *Storm v Paytime, Inc.*, 90 F. Supp. 3d 359, 360 (M.D. Pa. 2015)).

union beyond that which is prescribed under federal law. Section 301 of the LMRA, which governs collective bargaining agreements and other union contracts, preempts Plaintiffs' state law claims because they seek to regulate matters implicating such contracts.

### 1.    The Federal Duty of Fair Representation Preempts Plaintiffs' Claims

Plaintiffs' negligence claim alleges that UNITE HERE "had a duty to exercise reasonable care in safeguarding, securing, and protecting such Private Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties." (Dkt. 17, ¶ 151). Plaintiffs' "breach of confidence" claim alleges that "[a]s a labor union, UNITE HERE has a special, fiduciary relationship with its union members, including Plaintiffs and Class Members" and that "[b]ecause of that special relationship, UNITE HERE was provided with and stored Plaintiffs' and Class Members' Private Information and had a duty to maintain such Information in confidence." (*Id.*, ¶ 206). Plaintiffs' breach of implied contract claim alleges that UNITE HERE owed a contractual duty to Plaintiffs because, by "entrust[ing] their Private Information to Defendant…, Plaintiffs and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached and compromised or stolen." (*Id.*, ¶ 175). Plaintiffs' unjust enrichment claim alleges that, due to its failure to safeguard their data, UNITE HERE had an equitable duty to refund Plaintiffs' union dues. (*Id.*, ¶¶ 200, 202). Plaintiffs' claims under the New York Deceptive Trade Practices Act allege that UNITE HERE had a statutory duty under state law to safeguard Plaintiffs' data. (*Id.*, ¶ 216).

Whatever the origin of the alleged duty owed by UNITE HERE to Plaintiffs, their relationship is ultimately governed entirely by the federal duty of fair representation, which preempts all of Plaintiffs' state law causes of action. The duty of fair representation "is a

judicially-created doctrine that the Supreme Court found to be implicit in § 9 of the NLRA, 29

U.S.C. § 159," which "provides that the union is the exclusive bargaining representative of all

employees in a particular bargaining unit."    *George v. United States Postal Serv.*, No.

3:04cv1073 (PCD), 2006 U.S. Dist. LEXIS 20789, at *40 (D. Conn. Mar. 28, 2006).  A union's

status as an exclusive bargaining representative gives rise to "a statutory obligation to serve the

interests of all members [of the bargaining unit] without hostility or discrimination toward any,

to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."

*Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 74-78

(1991).  The duty of fair representation applies to all representational activity in which the union

engages. *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979).[22]

The scope of the duty of fair representation, and the consideration of whether the union

has complied with it, are defined solely by federal law.  *See Vaca*, 386 U.S. at 177; *Walsh v.

IBEW Local 503*, 62 F. Supp. 3d 300, 302-03 (S.D.N.Y. 2014).  Accordingly, the duty of fair

representation completely preempts state law claims which would impose a different standard on

the union's conduct in representing the bargaining unit.  *Walsh*, 62 F. Supp. 3d at 302-03

(S.D.N.Y. 2014) (holding that negligence claim was preempted, noting: "the federal duty of fair

representation completely preempts state law claims 'because federal law completely governs the

duties owed by an exclusive collective bargaining representative to those within the bargaining

unit, and because this manifestation of congressional will so closely parallels Congress's

intentions with regard to [Section 301 of the LMRA].'" (quoting *BIW Deceived v. Local S6,

Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 831 (1st Cir. 1997))); *Bryant v.

Am. Fed'n of Musicians of the US & Can. & Screen Actors Guild*, 2015 U.S. Dist. LEXIS

---

[22] *See also O'Neill*, 499 U.S. at 67.

155953, at *8 (S.D.N.Y. 2015) ("Plaintiff's state law claims for breach of fiduciary duty … are subsumed by the duty of fair representation."); *Brumbaugh v. IBEW, Local Union No. 51*, No. 06-3302, 2007 U.S. Dist. LEXIS 56270, at *12 (C.D. Ill. Aug. 2, 2007) (duty of fair representation preempts breach of implied contract claim, among other state law claims).[23]

"To prove that a union has breached its duty of fair representation, the challenging members must … [f]irst … prove that the union's actions or inactions 'are either "arbitrary, discriminatory, or in bad faith."'" *Vaughn v. Air Line Pilots, Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *O'Neill*, 499 U.S. at 67). As the Second Circuit has noted:

> A union's actions are "arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *O'Neill*, 499 U.S. at 67 (citation and quotation marks omitted). Moreover, "[t]actical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989). A union's acts are discriminatory when "substantial evidence" indicates that it engaged in discrimination that was "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 301, 91 S. Ct. 1909, 29 L. Ed. 2d 473 (1971). Bad faith, which "encompasses fraud, dishonesty, and other intentionally misleading conduct," requires proof that the union acted with "an improper intent, purpose, or motive." [*Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)] (citations omitted).

*Id.* at 709-10. Thus, the duty of fair representation plainly presents a different standard than any of Plaintiffs' state law tort, contract, equitable, or statutory causes of action.

There can also be no doubt that UNITE HERE's collection and maintenance of Plaintiffs' data was in connection with its "status as a Board-certified bargaining representative," to which the duty of fair representation applies. *See Breininger v. Sheet Metal Workers Int'l Ass'n Local*

---

[23] *See also Condon v. Local 2944, United Steelworkers of Am.*, 683 F.2d 590, 594-95 (1st Cir. 1982); *Johnson v. United Food & Commercial Workers Int'l Union Local No. 23*, 828 F.2d 961, 967 (3d Cir. 1987); *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1170-71 (4th Cir. 1985); *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1165-67 (5th Cir. 1989); *Maynard v. Revere Copper Prods., Inc.*, 773 F.2d 733, 735-36 (6th Cir. 1985); *Thomas v. National Ass'n of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000).

15

*Union No. 6*, 493 U.S. 67, 87-88 (1989); *Walsh*, 62 F. Supp. 3d at 303 ("A state law claim is subsumed by the duty of fair representation—and thus preempted—if it imposes an obligation on the union already imposed by the duty of fair representation.").[24]  Plaintiffs specifically allege that "[a]s a condition of receiving union representation and other benefits, UNITE HERE requires that its union members entrust it with highly sensitive personal and health information" and that "[i]n the ordinary course of receiving service from UNITE HERE, Plaintiffs and Class Members were required to provide their Private Information to Defendant."  (Dkt. 17, ¶ 26).

Thus, Plaintiffs' state law claims are plainly preempted by the federal duty of fair representation.  *See, e.g.*, *Walsh*, 62 F. Supp. 3d at 303 (claims that union "breached their fiduciary duties to plaintiffs" and "made fraudulent misrepresentations" preempted by duty of fair representation); *Ruisi v. NLRB*, 856 F.3d 1031, 1036 (D.C. Cir. 2017) (union's administration of privacy policies related to withdrawal of dues authorization subject to duty of fair representation standard).  That is the only result which preserves the finely balanced set of rights and obligations that federal labor law places on unions.  That balance is reflected, for example, in the limited damages available in duty of fair representation actions, which "reflects an attempt to afford individual employees redress for injuries caused by union misconduct without compromising the collective interests of union members in protecting limited funds." *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 50 (1979).  Preemption based on the federal duty of fair representation similarly protects the collective interests of all union members, which would be significantly impacted by Plaintiffs' claims.

---

[24] *Cahoon v. Int'l Bhd. of Elec. Workers Loc. 261*, 175 F. Supp. 2d 220, 227 (D. Conn. 2001) ("Courts finding that the DFR effects complete preemption have described the scope of the preempted field as including all representational conduct."); *BIW Deceived*, 132 F.3d at 833 (complete preemption where union acted in a "representational capacity"); *Madison v. Motion Picture Set Painters & Sign Writers Loc. 729*, 132 F. Supp. 2d 1244, 1256 (C.D. Cal. 2000) (duty of fair representation "applies to all representational activity in which the union engages").

### 2.    LMRA 301 Further Preempts Plaintiffs Contractual Claims

Like the duty of fair representation, Section 301 of the LMRA, 29 U.S.C § 185, also provides a basis for federal preemption of state law claims whenever a labor-management contract or a contract between unions is implicated.  *See, e.g., BIW Deceived*, 132 F.3d at 831 (noting that "DFR preemption operates in much the same fashion as section 301 preemption"); *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 405-06 (1988) (discussing Section 301 preemption in the context of a labor-management agreement); *United Ass'n of Journeymen & Apprentices v. Loc.*, 452 U.S. 615, 622 (1981) (discussing Section 301's application to agreements between labor unions).  As the Supreme Court has noted, "if the resolution of a state-law claim depends upon the meaning of [an agreement within the scope of Section 301], the application of state law … is pre-empted and federal labor-law principles … must be employed to resolve the dispute."  *Lingle*, 486 U.S. at 405-06.

"[A] union constitution is a 'contract' within the plain meaning of § 301(a)." *United Ass'n of Journeymen*, 452 U.S. at 622.[25]  Accordingly, in addition to the preemption afforded by the duty of fair representation, Section 301 would preclude any claim predicated on a relationship governed by the UNITE HERE Constitution.  *Arnold v. 1199 SEIU,* 2009 U.S. Dist. LEXIS 116579, *19 n.8 (S.D.N.Y. 2009), *aff'd*, 420 F. App'x 48 (2d Cir. 2011) ("Plaintiff's complaint does not make reference to the 1199 SEIU Union Constitution. To the extent that the plaintiff sought to rely upon breach of the Union Constitution as the basis for his breach of contract claim, however, such a claim would also be preempted by the LMRA").[26]  This would

---

[25] *See also Wooddell v. Int'l Bd. of Elec. Workers, Loc. 71*, 502 U.S. 93, 99 (1991).

[26] *See also Saunders v. Hankerson*, 312 F. Supp. 2d 46, 72 (D.D.C. 2004) ("To the extent that plaintiff's breach of fiduciary duty claim is premised on the provisions of the AFT Constitution, AFT is correct, and the claim is pre-empted by Section 301 of the LMRA. Similarly, because the common law breach of contract and negligence claims asserted in Count VI and VII are also premised on violation of AFT's alleged duties under the AFT Constitution, these claims are also

include anything pertaining to an individual's membership in the union, which is governed by Article 13 of the UNITE HERE Constitution (Ex. 1, pp. 52-55), among other provisions (*see, e.g., id.*, pp. 1-4).

As noted, Plaintiffs allege that "[a]s a condition of receiving union representation and other benefits, UNITE HERE requires that its union members entrust it with highly sensitive personal and health information."  Thus, Plaintiffs' claims are predicated on, and require reference to, what UNITE HERE requires for membership.  This would certainly preempt Plaintiffs' breach of implied contract claim and unjust enrichment claim, which specifically require reference to the UNITE HERE Constitution, a contract governed by Section 301.[27] However, "[p]reemption under Section 301 extends not only to contract claims, but also to suits alleging liability in tort."  *Arnold*, 2009 U.S. Dist. LEXIS 116579, at *20.  Accordingly, Section 301 would further preempt all of Plaintiffs' claims.

## C.    Each of Plaintiffs' Claims Fails as a Matter of Law

Even if Plaintiffs could meet the requirements of Article III standing, and no claims were preempted by federal law, each of their claims independently fails as a matter of law.

---

preempted by § 301 and must be dismissed as such.").  *C.f. Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 62 (2d Cir. 2010) ("Breach of contract claims founded directly on rights created by collective bargaining agreements or substantially dependent upon analysis of the terms of such agreements are completely preempted by Section 301") (internal citations and alterations omitted); *Estevez v Consol. Bus Tr., Inc.*, 2016 U.S. Dist. LEXIS 79766, at *15 (S.D.N.Y. 2016) (dismissing plaintiff's claim that the policy manual constituted an implied contract of employment, as it was preempted by 301 because the Court would still have to refer to and interpret the CBA's discharge provision to determine whether the termination was wrongful and to understand the procedure to resolve such grievances.).

[27] *See, e.g., Scott v. Fields*, 92 A.D.3d 666, 669 (N.Y. App. Div. 2012) ("A cause of action predicated on a theory of implied contract or quasi-contract is not viable where there is an express agreement that governs the subject matter underlying the action."); *Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012) ("'[A] party may not recover in … unjust enrichment where the parties have entered into a contract that governs the subject matter.'") (quoting *Cox v NAP Constr. Co., Inc.*, 10 N.Y.3d 592, 607 (2008))).

1.    **Plaintiffs' Complaint Fails to Allege Actual Injury Sufficient to State a Claim Under Any of the Causes of Actions Plead**

Cognizable loss or actual injury is an indispensable element of Plaintiffs' causes of action based on negligence, unjust enrichment, breach of confidence, and breach of implied contract. *See, e.g., Shafran v Harley-Davidson,* 2008 US Dist LEXIS 22494, at *7-9 (S.D.N.Y. 2008); *Wallace v Health Quest Sys.*, 2021 US Dist LEXIS 54557, at *31 (S.D.N.Y. 2021). Actual injury is also a requirement for Plaintiffs' statutory claims. *Wilson v. Northwestern Mutual Insurance Co.,* 625 F.3d 54, 64 (2d Cir. 2010). It is often confused with the requirement of injury-in-fact for Article III standing. However, while "the 'actual injury' analysis looks very similar to the 'injury in fact' analysis used to determine constitutional standing … [b]ecause [actual injury] is an element of a substantive cause of action, the pleading requirements differ." *Harry v Total Gas & Power N. Am., Inc.*, 889 F3d 104, 112 (2d Cir 2018).[28] With respect to actual injury, the "injury must be plausible, not just colorable." *Id.*

Here, for the same reasons that Plaintiffs lack standing, they fail to satisfy the higher standard of actual injury sufficient to state a claim under any of their causes of action. Given that higher standard, the Court could find standing and nonetheless dismiss the Complaint in its entirety because the Plaintiffs have not adequately pled actual injury. *See, e.g., McLoughlin v. People's United Bank, Inc.*, No. 3:08-cv-00944(VLB), 2009 U.S. Dist. LEXIS 78065 (D. Conn. Aug. 31, 2009) (finding standing under an expansive view of the injury-in-fact requirement, but nonetheless dismissing the complaint in its entirety for failure to adequately plead actual injury). Indeed, this Court has done so on several occasions in data breach and similar cases.[29]

---

[28] *See also Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) (a court should not "conflate Article III's requirement of injury in fact with [the Plaintiffs'] potential causes of action, for the concepts are not coextensive.").

[29] *See, e.g., Mount v. PulsePoint, Inc.*, 2016 U.S. Dist. LEXIS 112315, at *42 (S.D.N.Y. 2016) (finding standing in a case involving browsing data but dismissing the complaint for failure to

### 2.    Plaintiffs' Complaint Fails to State a Claim for Negligence

To state a claim for negligence, a plaintiff must allege "(1) that the defendant owed him or her a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damage as a proximate result of that breach." *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 432 (S.D.N.Y. 2010).  In addition to their failure to allege actual damages, Plaintiffs fail to allege any duty owed by UNITE HERE or how it breached that duty.

Plaintiff first alleges that "UNITE HERE's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45." (Dkt. 17, ¶ 155).  Section 5 of the FTC Act prohibits, in pertinent part, "unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(1).[30]  UNITE HERE is not accused of unfair or deceptive acts or practices with regard to Plaintiffs as consumers, only as members of UNITE HERE.  No court has held the FTC Act's reference to "unfair or deceptive acts or practices" to include acts undertaken by a labor union in relation to its own members.  Doing so would create significant conflicts within federal law.

Plaintiffs further allege that "UNITE HERE's duty also arose because Defendant was bound by industry standards to protect its union members' confidential Private Information." However, Plaintiffs do not allege what those industry standards might be.  Plaintiffs' general

---

state a claim); *Willey v. J.P. Morgan Chase, N.A.*, 2009 U.S. Dist. LEXIS 57826, at *26-27 (S.D.N.Y. 2009) (dismissing complaint for failure to state a claim because "[plaintiff's] claims for expenses related to credit monitoring, anxiety, emotional distress, and loss of privacy all arise due to the probability that his data might have been misused" which "does not rise to the level of actual damages"); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 280, 284 (S.D.N.Y. 2008) (finding standing but granting summary judgment to defendant on negligence and breach of fiduciary duty claims because New York would not likely recognize mitigation costs as damages).

[30] The FTC Act gives the FTC authority to "prevent persons, partnerships, or corporations" from engaging in unfair or deceptive acts or practices. 15 U.S.C. § 45(a)(2). UNITE HERE is not a partnership. It is also not a corporation, as the FTC Act defines "corporation" as "any company ... which is organized to carry on business for its own profit or that of its members." *Id.* § 44. UNITE HERE does not carry on a business for its own profit or those of its members.

allegations of a duty of care, which are repeated throughout the Complaint, are too conclusory to meet even the basic standard under Rule 8 of a "short and plain statement of the claim." *See, e.g., In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 286 (S.D.N.Y. 2005) ("Even under the liberal notice pleading standard of Rule 8…conclusory assertions are inadequate.").

Plaintiffs' failure to specify how UNITE HERE might have breached the duty of care is also fatal to their claim. *See, e.g., In re Waste Mgmt. Data Breach Litig.*, 2022 U.S. Dist. LEXIS 32798, *12 (S.D.N.Y. 2022) ("[Plaintiff] fails to state a claim for negligence, because it does not plausibly allege that Waste Management breached any duty of care. Although the CAC contains many conclusory allegations that Waste Management failed to take reasonable measures to protect its data, the CAC pleads no facts regarding any specific measures that Waste Management did or didn't take, nor does it contain any allegations regarding the manner in which their systems were breached.").

### 3.      Plaintiffs' Complaint Fails to State a Claim for Breach of Implied Contract

The elements of a claim for breach of implied contract, which are identical to those necessary to allege a breach of contract, *Wallace v. Health Quest Sys.*, 2021 U.S. Dist. LEXIS 54557, *27 (S.D.N.Y. 2021), are: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) breach by the other party, and (4) damages suffered as a result of the breach," *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 Fed. Appx. 274, 276 (2d Cir. 2018). The Complaint here does not allege facts sufficient to plausibly claim the existence of an implied contract (at least not one distinct from the membership relationship governed by the UNITE HERE Constitution and, therefore, LMRA § 301) or any breach by UNITE HERE.

Plaintiffs claim they "entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been

breached and compromised or stolen."  (Dkt. 17, ¶ 175).  Plaintiffs do not even attempt to explain what those contracts might be, when or how they were formed, or what consideration was involved.  Plaintiffs allege, "[o]n information and belief," that UNITE HERE "promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiffs and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach."  (Dkt. 17, ¶ 181).  However, the only privacy policy identified in Plaintiffs' Complaint is from UNITE HERE's webpage (*Id.*, ¶27), which relates only to "information that you may provide while visiting our website and/or visiting UNITE HERE's pages or accounts on third-party websites (such as Facebook and Twitter)."[31]

Obviously, there can be no plausible allegation that a contract has been offered to and accepted by Plaintiffs if they are not even able to identify the terms of the supposed contract, much less when the purported offer was made, in what form, and by whom.  *See Tate v. EyeMed Vision Care, LLC*, No. 1:21-CV-36, 2023 U.S. Dist. LEXIS 175840, *24 (S.D. Ohio Sept. 29, 2023) (beyond a "threadbare allegation, Plaintiffs fail to allege any facts to support the claim that EyeMed agreed to provide data security as a condition of service"); *Iqbal*, 556 U.S. at 678 (conclusory statements and legal conclusions need not be accepted as true).  Plaintiffs have also failed to identify how UNITE HERE could possibly have breached that nonexistent contract.[32]

### 4.    Plaintiffs' Complaint Fails to State a Claim for Unjust Enrichment

To state a claim for unjust enrichment, "a plaintiff must allege that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution."  *Labajo v. Best Buy Stores,*

---

[31] *See* https://unitehere.org/privacy-policy/.
[32] *See, e.g., Troy v. A.B.A.*, No. 23-CV-03053 (NGG) (VMS), 2024 U.S. Dist. LEXIS 78206, at *12 (E.D.N.Y. Apr. 30, 2024) ("Absent allegations identifying the security measures ABA purportedly failed to implement, Plaintiffs cannot sustain their breach of implied contract claim.").

*L.P.*, 478 F. Supp. 2d 523, 530-531 (S.D.N.Y. 2007).  In the Complaint, Plaintiffs do not state a viable cause of action for unjust enrichment.  Instead, Plaintiffs assert that "Plaintiffs and Class Members conferred a monetary benefit on Defendant" in that they provided UNITE HERE with "their Private Information and payment of membership dues."  (Dkt. 17, ¶ 193).

Although the Complaint is not explicit on this point, Plaintiffs' unjust enrichment claim ultimately seeks a refund of their union dues based on a claim that Plaintiffs did not receive all of the representation to which they were entitled.  While, for the reasons discussed, such a claim obviously implicates federal labor laws, Plaintiffs also fail to allege any facts indicating that UNITE HERE was conferred any benefit by receiving Plaintiffs' Private Information or that equity requires that benefit to be returned.  As previously discussed, courts have uniformly rejected Plaintiffs' overpayment theory of damages, because (like here) the providing of personal information was merely incidental to the parties' relationship.  *See, e.g., Whalen*, 153 F. Supp. 3d at 581 (rejecting plaintiff's benefit of the bargain theory because they failed to allege a different price charged to customers for purpose of security services).[33]

### 5.    Plaintiffs' Complaint Fails to State a Claim for Breach of Confidence

"New York law recognizes breach of confidence as an independent tort, although one that may only protect a patient's medical information."  *In re Waste Mgmt. Data Breach Litig.*, No. 21cv6147 (DLC), 2022 U.S. Dist. LEXIS 32798, at *9 (S.D.N.Y. Feb. 24, 2022).[34]  However, New York has only applied the tort to physician-patient relationships.  *Young v. U.S. Dep't of Justice*, 882 F.2d 633, 640-41 (2d Cir. 1989).  Plaintiffs' breach of confidence claim can and

---

[33] *See also Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1068 (C.D. Ill. 2016); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1248-49 (D. Colo. 2018); *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016).

[34] *See also Chanko v. Am. Broadcasting Cos. Inc.*, 27 N.Y.3d 46, 53-54, 29 N.Y.S.3d 879, 49 N.E.3d 1171 (2016).

should, therefore, be dismissed on that basis alone.[35]

Further, to state a claim for breach of confidence, "a plaintiff must plead: (i) the defendant assumed a duty of confidentiality, (ii) the defendant intentionally, knowingly, or negligently breached that duty, and (iii) the plaintiff was damaged as a result of that breach." *In re Canon U.S.A. Data Breach Litig.*, 2022 U.S. Dist. LEXIS 248197, *28 (E.D.N.Y. 2022).  The cases permitting breach of confidence claims make clear that, "the gravamen [of such claims] is fundamentally the breach of the fiduciary duty of confidentiality."  *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, *43 (W.D.N.Y. 2024).[36]  Plaintiffs have failed to adequately plead any duty of confidentiality, how UNITE HERE breached that duty, or, as previously discussed, how they suffered any actual damages as a result of the alleged breach.

### 6.    Plaintiffs Fail to State a Claim under the N.Y. Deceptive Trade Practices Act

The New York Deceptive Trade Practices Act proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state." *See* NYGBL § 349(a).  To state a claim under the Act, a plaintiff must allege "(1) that the defendant's acts were consumer oriented, (2) that the acts or practices are 'deceptive or misleading in a material way,' and (3) that the plaintiff has been injured as a result." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014).

In the Complaint, Plaintiffs have not alleged that UNITE HERE engaged in any consumer-oriented conduct.  The relationship between Plaintiffs and UNITE HERE is one of union and union member, which does not constitute a consumer relationship.  Further, Plaintiffs have failed to properly plead how the acts of UNITE HERE were deceptive or misleading or that

---

[35] It also does not appear that a separate tort for "breach of confidence" is recognized in either Washington, where Plaintiff Puller-Soto resides, or Michigan, where Plaintiff Conway resides. *See, e.g., Berger v. Sonneland*, 144 Wash. 2d 91, 26 P.3d 257 (2001); *Schwartz v. Gilbert*, No. 279992, 2009 Mich. App. LEXIS 354 (Ct. App. Feb. 19, 2009).
[36] *See also Wallace v. Health Quest Sys.*, 2021 U.S. Dist. LEXIS 54557, at *12 (S.D.N.Y. 2021).

24

Plaintiffs were actually aware of those acts.[37]   Rather, they simply allege, without concrete justification, that "Defendant's conduct is unconscionable, deceptive, and unfair."  As discussed, Plaintiffs have also failed to plead the existence of any cognizable injury.

> 7.  **Plaintiffs' Complaint Fails to State a Claim for Declaratory Relief**

A court's authority to grant a declaratory judgment derives from the Declaratory Judgment Act, which permits a court to enter declaratory relief only "[i]n a case of actual controversy," 28 U.S.C. § 2201(a), which "has been interpreted as reflecting Article III of the U.S. Constitution's case or controversy requirement." *Nebraskaland, Inc. v. Sunoco, Inc.*, 2010 U.S. Dist. LEXIS 129013, *1 (E.D.N.Y. 2010) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 125 (2007)).  "A case or controversy exists when there is (1) a substantial controversy; (2) between parties having adverse legal interests; and (3) of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*  In addition to the standing issues previously discussed, as well as the failure of Plaintiffs' Rule 23(b)(2) allegations, Plaintiffs' declaratory and injunctive relief claim should be dismissed as duplicative. *See, e.g., Jerusalem v. Mass. Mut. Life Ins. Co.*, 2022 U.S. Dist. LEXIS 194206, *21 (E.D.N.Y. 2022) ("Here, the Court finds that no useful purpose would be served by granting declaratory relief because this claim is duplicative of the breach of contract claim").

## V.    CONCLUSION

For each of the reasons stated above, the Court should dismiss Plaintiffs' Complaint, in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

---

[37] *See. e.g., Troy*, 2024 U.S. Dist. LEXIS 78206, at *15 ("Plaintiffs do not allege that they saw or read the privacy policy prior to the alleged harm.").

Dated:  May 3, 2024
        New York, New York

/s/ Richard W. Boone Jr.
Richard W. Boone Jr.
Siobhán A. Mueller
**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail: richard.boone@wilsonelser.com
E-mail: siobhan.mueller@wilsonelser.com

***Attorneys for Defendant UNITE HERE***

26

## CERTIFICATION

The foregoing **MEMORANDUM OF LAW** was prepared on a computer, using Microsoft Word, the typeface is Times New Roman, the main body is in 12-point font with 1-inch margins throughout, the footnotes are in 12-point font, and the length is 25 pages double-spaced.

*/s/ Richard W. Boone Jr.*
Richard W. Boone Jr.
Siobhán A. Mueller
**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail: richard.boone@wilsonelser.com
E-mail: siobhan.mueller@wilsonelser.com

***Attorneys for Defendant UNITE HERE***

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.  By registering with the Court's CM/ECF system, each has consented to electronic service via this method.

DATED: This 3rd day of May 2024

>/s/ Richard W. Boone Jr.
>Richard W. Boone Jr.
>Siobhán A. Mueller
>**WILSON, ELSER, MOSKOWITZ,**
>**EDELMAN & DICKER LLP**
>150 East 42nd Street
>New York, NY 10017
>Telephone: (212) 490-3000
>Fax: (212) 490-3038
>E-mail: richard.boone@wilsonelser.com
>E-mail: siobhan.mueller@wilsonelser.com
>
>*Attorneys for Defendant UNITE HERE*