**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re UNITE HERE DATA SECURITY INCIDENT LITIGATION<br><br><br>This Document Relates To:<br><br>    ALL ACTIONS. | Lead Case No. 1:24-cv-01565-JSR<br><br>(Consolidated with Case No. 1:24-cv-01904) |

**PLAINTIFFS' MOTION FOR AWARD**
**OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL HISTORY ................................................................................. 2

III.    SUMMARY OF THE SETTLEMENT ............................................................. 5

IV.     THE REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE .... 7

    A.    The Goldberger Factors Considered by Courts in this Circuit Support the
       Requested Fees Award ............................................................................. 9

       1.   The time and labor expended by counsel ........................................ 9

       2.   The magnitude and complexities of the litigation ......................... 10

       3.   The risk of litigation ..................................................................... 12

       4.   The quality of representation ......................................................... 14

       5.   The requested fee in relation to the settlement .............................. 14

       6.   Public Policy Considerations ......................................................... 17

       7.   Lodestar Cross Check .................................................................... 17

    B.    Class Counsel's Expenses Are Reasonable and Should Be Reimbursed ................. 18

    C.    The Requested Service Awards Should Be Approved ........................... 19

V.      CONCLUSION .................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alliance Ophthalmology, PLLC v. ECL Group, LLC*,
   No. 1:22-CV-296, 2024 U.S. Dist. LEXIS 113914 (M.D.N.C. June 27, 2024) ...................... 16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) ................................................................................................ 11

*Aros v. United Rentals, Inc.*,
   No. 3:10-cv-73 (JCH), 2012 U.S. Dist. LEXIS 104429 (D. Conn. July 26, 2012) ................. 15

*Barletti v. Connexin Software, Inc.*,
   No. 2:22-cv-04676-JDW, 2024 U.S. Dist. LEXIS 43851 (E.D. Pa. Mar. 13, 2024)............... 16

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................................... 15, 18

*Bell v. Michigan Council 25*,
   No. 246684, 2005 Mich. App. LEXIS 353 (Mich. Ct. of App. Feb. 15, 2005) ...................... 11

*Bozak v. FedEx Ground Package Sys., Inc.*,
   No. 3:11-cv-00738-RNC, 2014 WL 3778211 (D. Conn. July 31, 2014) ................................ 18

*Brown v. 22nd Dist. Agric. Ass'n*,
   No. 15-CV-02578-DHB, 2017 WL 3131557 (S.D. Cal. July 24, 2017) .................................. 13

*Caccavale v. Hewlett-Packard Co.*,
   No. 20-cv-974-NJC-ST, 2025 U.S. Dist. LEXIS 47302 (E.D.N.Y. Mar. 14, 2025) ............... 15

*Ching v. Siemens Indus.*,
   No. 11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ................................. 13

*City of Detroit v. Grinnell Corp.*,
   560 F.2d 1093 (2d Cir. 1977)................................................................................................ 7

*City of Providence v. Aéropostale, Inc.*,
   2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014)........................................................ 15

*Cosgrove v. Sullivan*,
759 F. Supp. 166 (S.D.N.Y.1991) ........................................................................................ 18

*Dornberger v. Metro. Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) .......................................................................................... 19

*Fleisher v. Phoenix Life Ins. Co.*,
   Nos. 11-CV-8405 (CM) & 14-CV-8714 (CM), 2015 U.S. Dist. LEXIS 121574
   (S.D.N.Y. Sept. 9, 2015) .................................................................................................. 14, 18

*Fox v. Iowa Health Sys.*,
   No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021).................................. 13

*Gaston v. Fabfitfun, Inc.*,
   No. 2:20-cv-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ............................. 10

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43, 47 (2d Cir. 2000)......................................................................... 7, 8, 9, 16, 17

*Gordon v. Chipotle Mexican Grill, Inc.*,
   No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019)......................... 13

*Green-Cooper v. Brinker Intl., Inc.*,
   73 F. 4th 883 (11th Cir. 2023) ............................................................................................... 12

*Grimm v. American Eagle Airlines, Inc.*,
   No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376 (C.D. Cal. Sept. 24, 2014) ............. 12

*Hammond v. Bank of N.Y. Mellon Corp.*,
   No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ...................... 11

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018)............................................................................................ 11

*In re Brinker Data Incident Litig.*,
   No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ......................... 12

*In re Capital One Consumer Data Security Breach Litig.*,
   No. 1:19-md-2915 (AJT/JFA), 2022 WL 17176495 (E.D. Va. Nov. 17, 2022)...................... 17

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) ......................................................................... 8, 17

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-cv-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2020) ......................... 13

*In re Frontier Commc'ns Corp.*,
   No. 3:17-cv-01617-VAB, 2022 WL 4080324 (D. Conn. May 20, 2022)................................ 13

*In re GSE Bonds Antitr. Litig.*,
   14 F. Supp. 3d 686 (S.D.N.Y. 2019)...................................................................................... 15

*In re Hi-Crush Partners L.P. Securities Litigation*,
    No. 12-cv-8557 (CM), 2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ................ 15

*In re Hudson's Bay Co. Data Breach Incident Consumer Litig.*,
    No. 18-cv-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022)...................................... 10

*In re Lloyd's Am. Tr. Fund Litig.*,
    No. 96 Civ. 1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)................................... 8

*In re Marriott Int. Inc. Customer Data Security Breach Litig.*,
    345 F.R.D. 137 (M. Md. 2023) ................................................................................................. 12

*In Re Marriott Int. Inc. Customer Data Security Breach Litig.*,
    No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022) .................................................... 12

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128, 150 (S.D.N.Y. 2010) ..................................................................................... 19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ..................................................................................... 15

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) .............................................................................. 16

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    No. 1:17-md- 2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ...................................... 10

*Kemp-DeLisser v. St. Francis Hosp. & Med. Ctr.*,
    No. 15-cv-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016).................................... 19

*Keown v. International Ass'n of Sheet Metal Air Rail Transp. Workers*,
    No. 23-cv-3570 (CRC), 2024 U.S. Dist. LEXIS 168789 (D.D.C. Sep. 19, 2024) .................. 11

*Kiefer v. Moran Foods, LLC*,
    No. 12-cv-756 (WGY), 2014 U.S. Dist. LEXIS 106924 (D. Conn. Aug. 5, 2014)........... 15, 19

*Kohari v. MetLife Group, Inc*.,
    No. 21-cv-6146 (KHP), 2025 U.S. Dist. LEXIS 7675 (S.D.N.Y. Jan. 15, 2025)..................... 15

*Krant v. UnitedLex Corp.*,
    No. 23-2443-DDC-TJJ, 2024 U.S. Dist. LEXIS 230685 (D. Kan. Dec. 19, 2024)................. 16

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234, 1238 (9th Cir. 1998) ....................................................................................... 10

*McDaniel v. Cnty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010).................................................................. 7, 8

*McGreevy v. Life Alert Emergency Response, Inc.*,
258 F. Supp. 3d 380 (S.D.N.Y. 2017)........................................................ 8

*McLaughlin v. IDT Energy*,
No. 14-cv-417 (ENV) (RML), 2018 WL 3642627 (E.D.N.Y. July 30, 2018) ........................ 20

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y 2012)........................................................ 18

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .................................................. 10

*Fleisher v. Phoenix Life Ins. Co.*,
No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sep. 9, 2015)................... 18

*Silva v. Consol. Scaffolding, Inc.*,
No. 1:24-cv-04591, 2024 U.S. Dist. LEXIS 168162 (S.D.N.Y. Sept. 18, 2024) ................... 16

*Simerlein v. Toyota Motor Corp.*,
No. 3:17-cv-1091 (VAB), 2019 WL 96742 (D. Conn. June 10, 2019) .................................. 19

*Smith v. Triad of Ala.*, LLC,
No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017)............. 12

*Thomsen v. Morley Cos.*,
No. 1:22-cv-10271, 2023 U.S. Dist. LEXIS 84005 (E.D. Mich. May 12, 2023) ................... 16

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)................................................................. 8

*Yuzary v. HSBC Bank USA, N.A.*,
No.12-cv-3693, 2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013)............................. 18

*Zimmerman v. Paramount Global*,
No. 23-CV-2409 (VSB), 2025 U.S. Dist. LEXIS 43617 (S.D.N.Y. Mar. 11, 2025)............... 15

**Rules**

Federal Rules of Civil Procedure ....................................................... 7, 11, 19

**Other Authorities**

*Newberg on Class Actions*
   (5th ed.)..................................................................................................................... 8

Posner, *Economic Analysis of Law*,
   (4th ed. 1992) ............................................................................................................ 13

Plaintiffs Michelle Puller-Soto and Tamiko Conway, on behalf of the Settlement Class,[1] hereby move this Court for an order granting Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. In support of this Motion, Plaintiffs submit the *Declaration of Mason A. Barney in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Service Awards* ("Barney Decl."), all other pleadings and papers on file in this Action, and any oral argument that may be heard by this Court during the Final Approval Hearing currently scheduled for May 12, 2025.

## I.    INTRODUCTION

After investigating, organizing, and filing their claims against Defendant arising from Defendant's Incident, overcoming Defendant's Motion to Dismiss such claims, and engaging in extensive formal discovery, arms'-length negotiations, and a full-day mediation, the Parties reached agreement on the Settlement that provides significant relief for all Settlement Class Members. The substantial Settlement Benefits include creation of a non-reversionary cash Settlement Fund in the amount of six million dollars ($6,000,000) from which payments will be made to the Class Members for: (1) reimbursement for Out-of-Pocket Losses incurred as a result of the Incident; (2) credit monitoring services; and (3) pro rata cash payments. *See* Settlement Agreement ("SA"), ¶ 2.1. In addition, the Settlement Fund will cover all notice and administration costs; any service award payments approved by the Court; and any attorneys' fees and expenses as awarded by the Court. Class Counsel also secured non-monetary equitable relief for the Settlement Class in the form of data security enhancements implemented at considerable cost to Defendant.

In light of these outstanding results for the class, Class Counsel is requesting attorneys'

---

[1] The capitalized terms herein shall have the same meaning as those defined in the Settlement Agreement ("SA") submitted with Plaintiffs' Motion for Preliminary Approval. Dkt. No. 36-1.

fees and expenses in the amount of one-third of the Settlement Fund (*i.e.*, $2,000,000) and service awards to each plaintiff in the amount of $3,500 each for a total of $7,000 in service awards. The requested fee and service award are fair, reasonable, and adequate and, for the reasons set forth below, the Court should grant this Motion for Award of Attorneys' Fees, Costs, and Service Awards.

## II.    PROCEDURAL HISTORY

This litigation was initiated when Plaintiffs filed their respective actions in the Southern District of New York: *Puller-Soto v. UNITE HERE*, Case No. 1:24-cv-01565 (filed Feb. 29, 2024) and *Conway v. UNITE HERE*, Case No. 1:24-cv-01904 (filed Mar. 13, 2024). Both cases asserted causes of action arising from a cyber security incident, which exposed Plaintiffs' and the Class's names, Social Security numbers, dates of birth, driver's license numbers, state identification numbers, medical information, and financial account information (the "Private Information"). On April 5, 2024, the Court consolidated the two actions and appointed Mason A. Barney and Tyler J. Bean of Siri & Glimstad LLP, and John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC, as Interim Class Counsel. (Dkt. No. 14). On April 12, 2024, Plaintiffs filed their Consolidated Class Action Complaint (Dkt. No. 17) and asserted claims for negligence, breach of implied contract, unjust enrichment, breach of confidence, declaratory judgment, and violation of the New York Deceptive Trade Practices Act.

On May 3, 2024, Defendant filed a motion to dismiss Plaintiffs' consolidated complaint, which asserted several novel arguments in the data breach context concerning federal preemption and Defendant's status as a labor union. (Dkt Nos. 20-21). Plaintiffs opposed that motion (Dkt. Nos. 23-24), and on July 15, 2024, this Court issued an Opinion and Order ("Order") that largely denied Defendant's motion, including holding that Plaintiffs had standing, and that Plaintiffs'

claims were not preempted by the National Labor Relations Act or the Labor Management Relations Act. The Court then found that Plaintiffs had adequately pled all of their claims, except Plaintiffs' New York Deceptive Trade Practices Act claim, which it dismissed. (Dkt. No. 25). On August 14, 2024, Defendant filed a motion for leave to appeal, which this Court denied. (Dkt. Nos. 27-29).

During the pendency of this case, the Parties informally explored and discussed the relevant factual and legal issues and the potential for early resolution of this matter. Barney Decl. ¶¶ 13-14. After the Court resolved Defendant's challenge to Plaintiffs' Consolidated Complaint, the Parties formally agreed to engage in mediation and exchanged mediator proposals. *Id.* In advance of mediation, the Parties provided informal discovery and detailed statements of their positions on the factual and legal issues in this matter. *Id.* On September 16, 2024, the Parties participated in a full-day mediation session with Jed D. Melnick of JAMS. *Id.* ¶ 12.

While the Parties discussed mediation, both Plaintiffs and Defendant propounded to and responded to formal written discovery and produced and reviewed responsive documents. Barney Decl. ¶ 14. Defendant produced 673,996 documents which Class Counsel reviewed while the Parties remained in settlement negotiations. *Id.* Plaintiffs also engaged expert witnesses and began to prepare expert reports in support of their anticipated motion for class certification. *Id.*

Even though the action did not resolve at mediation, over the following weeks, the Parties continued to negotiate and ultimately reached a settlement in principle. *Id.* ¶ 15. Thereafter, the Parties continued to negotiate the specific material terms for the Settlement Agreement, which the Court ultimately preliminarily approved on January 10. (Dkt. No. 38). The Parties reached the proposed Settlement Agreement through arm's length discussions, with the assistance of an experienced mediator and, Class Counsel understands, with approval from Defendant's multiple

insurance companies. Barney Decl. ¶ 15. The Parties did not discuss attorneys' fees or service awards until after the class relief was agreed upon. *Id*. ¶ 23.

The Settlement Agreement fairly takes into account the significant risks to both the Settlement Class and Defendant associated with pursuing this litigation further. Given the comparative strengths and weaknesses of Plaintiffs' claims and Defendant's defenses, as well as the inherent uncertainties of litigation, this Settlement provides for a $6,000,000 non-reversionary Settlement Fund and is an exceptional result and well within the scope of what is fair, reasonable, and adequate for the Settlement Class.

After this Court granted Preliminary Approval, the Settlement Administrator began disseminating Notice to the Settlement Class on February 10, 2025. Barney Decl. ¶ 17. Individual Short Notice was provided directly to Settlement Class Members via first class mail and email. *Id*. ¶ 18. The Settlement Administrator established a Settlement Website that allows the members of the Settlement Class to request information, submit Claim Forms and obtain notice documents. The Settlement Website also hosts relevant documents about the Settlement, including the Short Notice, Long Notice, and Claim Form. *Id*. The Notice provided each Settlement Class Member with all the necessary information to understand the terms of the Settlement, how to make a Claim, and how to opt-out of or object to the Settlement. *Id*. The Settlement Administrator also established and maintained a toll-free help line to provide Settlement Class Members with additional information about the Settlement and to respond to Settlement Class Members' inquiries. *Id*. ¶ 19. The deadline to opt-out or object to the Settlement is April 11, 2025 and to date, not a single Settlement Class Member has objected to any part of the Settlement, and only 7 have requested to opt-out of the Settlement. *Id.* ¶¶ 22-23. With the claims period closing on April 28, 2025, to date a total of 15,066 claims have been received, with over a month still remaining for Settlement Class

Members to submit a claim, *id.* ¶ 20. This represents a claims rate of over 1.9%, which compares very favorably to similar data privacy class action settlements in which claims rates typically range between 1% and 3%, especially given the fact that ample time remains for Settlement Class Members to make a claim. The Settlement Class's overwhelmingly positive response to the Settlement thus far affirms that the Court's initial conclusion that the Settlement is fair, reasonable, and adequate was fully justified.

## III.    SUMMARY OF THE SETTLEMENT

Below is a summary of the Agreement's material terms and the Settlement Benefits.

### Settlement Class

The Settlement Class consists of:

> All persons residing in the United States whose Private Information was actually or potentially compromised as a result of the Incident discovered by UNITE HERE in October 2023.

SA, ¶ 1.26.

Excluded from the Settlement Class are (i) UNITE HERE and its officers and directors and the Related Parties; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity resulting in the occurrence of the Incident or who pleads nolo contendere to any such charge. *Id.*

### Settlement Consideration

The Settlement requires UNITE HERE to create a non- reversionary cash Settlement Fund in the amount of six million dollars ($6,000,000) from which payments will be made for: (1) reimbursement for Out-of-Pocket Losses; (2) *pro rata* cash payments; (3) all notice and administration costs; (4) credit monitoring services; (5) any service award payments approved by

5

the Court; and (6) attorneys' fees and expenses as awarded by the Court. SA, ¶ 2.1.

Settlement Class Members may submit claims to receive a payment of up to $5,000 in compensation for documented out-of-pocket losses incurred as a result of the Incident. *Id.* ¶ 2.3.1. Settlement Class Members may also elect to receive a *pro rata* cash fund payment regardless of whether they make a claim for documented Out-of-Pocket Losses. *Id.*, ¶ 2.3.2. The *pro rata* cash fund payment will evenly distribute the net amount of the Settlement Fund, after payment of: (a) all approved claims for Out-of-Pocket Losses, (b) Costs of Settlement Administration, (c) the cost of Credit Monitoring, and (d) any attorneys' fee and expense award and service awards, with such net amount to be distributed to each Settlement Class Member who submits a Valid Claim. *Id.* All Settlement Class Members who submit a Valid Claim using the Claim Form, including necessary supporting documentation, are eligible for two years of three bureau credit monitoring. *Id.* ¶ 2.2.

Settlement Class Members seeking reimbursement under Section 2.3 of the Settlement Agreement must complete and submit a Claim Form to the Settlement Administrator, postmarked or submitted online on or before April 28, 2025, as set forth in Section 3.2(d) of the Settlement Agreement. *Id.* ¶¶ 2.3.4, 3.2(d).

Additionally, the Settlement requires Defendant to make significant improvements to its information security, the costs of which will be borne by Defendant separate and apart from the Settlement Fund and any other settlement benefits. *Id.* ¶ 2.5.

Finally, under the terms of the Settlement Agreement, Class Counsel may apply to the Court for an award of attorneys' fees not to exceed one-third (1/3) of the Settlement Fund, litigation costs and expenses in an amount not to exceed $30,000, and for service awards for the Representative Plaintiffs in an amount not to exceed $3,500.00 each (for a total payment of $7,000). *Id.* ¶¶ 7.2-7.3.

### Releases

The Releases are tailored to the claims "based on, relating to, concerning, or arising out of the Incident.," *i.e.*, only claims that have been pleaded or could have been pleaded in this Action. Settlement Class Members who do not opt-out of the Settlement will release all claims, whether known or unknown, against Defendant and its affiliates, that relate to the Data Incident. *Id.* ¶¶ 1.21, 1.32.

### Attorneys' Fees, Costs, and Service Awards

Plaintiffs now request that the Court grant an attorneys' fee award of one-third (1/3) of the Settlement Fund (*i.e.,* $2,000,000), along with reimbursement of $18,513,21 for reasonable litigation costs. Plaintiffs also request $3,500.00 Service Awards for each Class Representative ($7,000.00 total). The attorneys' fees, costs, and Service Awards will be paid from the Settlement Fund pursuant to the Settlement Agreement.

## IV.    THE REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE

In Rule 23 class actions, the "attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The reasonableness of a fee is evaluated based on consideration of the six *Goldberger* factors: "(1) counsel's time and labor; (2) the litigation's magnitude and complexity; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010) (citing *Goldberger*, 209 F.3d at 50). In deciding an appropriate fee, the Court must "act as a fiduciary who must serve as a guardian of the rights of absent class members." *Id.* at 419 (quoting *City of Detroit v. Grinnell Corp. ("Grinnell II")*, 560 F.2d 1093, 1099 (2d Cir. 1977); abrogated on other grounds by *Goldberger*, 209 F.3d at 43).

"Under the percentage of the fund method," which is the trend in this Circuit, "class counsel is awarded a reasonable percentage of the total value of the settlement fund created for the class." *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 384 (S.D.N.Y. 2017) (citing *Goldberger*, 209 F.3d at 47; *McDaniel*, 595 F.3d at 423). The "lodestar method creates 'a disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of the line-item fee audits.'" *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) (quoting *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)); *Goldberger*, 209 F.3d at 48 ("experience with the lodestar method proved vexing" and citing the same issues with that method). The percentage method, on the other hand, "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (quoting *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *74 (S.D.N.Y. Nov. 26, 2002)). As the leading class action treatise explains:

> [T]he common fund fee award, as a contingent fee award, should often (if not always) be higher than counsel's lodestar itself. This is true because the fee reflects both the provision of legal services and the loan to the class of the attorney's resources and services, at the risk of recovering nothing. . . . Given the higher risk of not getting paid, and the loan of the attorney's resources and services to the class, there must be some higher reward when a payday arrives.

*5 Newberg on Class Actions* § 15:73 (5th ed.).

In assessing a request for an award of attorneys' fees, courts typically look to the six "*Goldberger* factors" quoted above. In light of the excellent results obtained for the Settlement Class, Class Counsel's attorneys' fee request of one-third of the common fund ($2,000,000.00) is reasonable as a percentage of the $6,000,000.00 common fund.

**A.    The Goldberger Factors Considered by Courts in this Circuit Support the Requested Fees Award**

### 1.    The time and labor expended by counsel

As detailed in the supporting Barney Declaration, Class Counsel have expended substantial effort to prosecute this Action and will be required to expend even more to bring this Action to conclusion. Barney Decl. ¶¶ 25-30. Class Counsel have devoted significant time to prosecute and ultimately settle this litigation to the benefit of the Class. *Id*. Class Counsel initiated this Litigation only after performing an in-depth investigation concerning the facts and circumstances of the Incident, researching publicly available information about Defendant and its structure, interviewing potential class members, and researching applicable legal theories and causes of action. Class Counsel also self-organized and jointly moved to consolidate their respective cases and to have interim class counsel appointed to oversee the Litigation. Following consolidation, Class Counsel researched and prepared a detailed consolidated complaint and ultimately prevailed over Defendant's attempts to dismiss the complaint on multiple grounds. Barney Decl. ¶¶ 11-15.

Moreover, while the Parties agreed to explore mediation, they remained in full litigation posture and propounded and responded to written discovery, engaged expert consultants, and Plaintiffs prepared to file a contested class certification motion. Barney Decl. ¶¶ 14.  Indeed, Defendant produced over 600,000 pages of responsive documents and the Parties engaged in significant meet and confer efforts to resolve discovery disputes. *Id.* The Parties also began preparing for depositions and Plaintiffs issued a 30(b)(6) notice and began to prepare to depose Defendant's responsible employees. *Id.* In addition to formal litigation, Class Counsel engaged in informal pre-mediation discovery, prepared for and attended mediation and submitted a detailed mediation statement, engaged in protracted settlement discussions, drafted the Settlement Agreement and notice documents, worked with the Settlement Administrator, and drafted

preliminary approval papers. *Id.*

Additionally, a fee award is also meant to compensate for work still to be performed in the future.  Following submission of this motion, Class Counsel will still need to, among other things: (1) draft and file a motion for final approval of the Settlement; (2) prepare for and attend the Final Approval Hearing before the Court; (3) address any objections that may be raised to the Settlement; and (4) communicate with Settlement Class Members to answer any questions they may have. Barney Decl. ¶ 28; *see also Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time.").  Accordingly, this factor strongly supports the requested fee award.

### 2.      The magnitude and complexities of the litigation

Although nearly all class actions involve a high level of risk, expense, and complexity, such risk, expense, and complexity apply even more so to data breach litigation, undergirding the strong judicial policy favoring amicable resolutions. *In re Hudson's Bay Co. Data Breach Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 WL 2063864, at *19 (S.D.N.Y. June 8, 2022) ("The magnitude and complexity of this case are reflected in the volume of affected payment cards and the technical details of how malware breached the retailers point-of-payment system and payment-card data made its way to the so-called "dark web."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) ("data breach class actions are among the riskiest and uncertain of all class action litigation due to the absence of direct precedent certifying data breach cases as class actions."); *see also Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534-RGK-E, 2021 WL 6496734, at *7 (C.D. Cal. Dec. 9, 2021) (same)*; In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md- 2807, 2019 WL 3773737, at *14 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is

complex and risky."). While almost all class actions involve a high level of risk, expense, and complexity, numerous courts have recognized that data breach cases are especially expensive and complex given the unsettled and evolving nature of the law. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). This risk is highlighted by the fact that data breach cases have faced substantial hurdles in making it past the pleading stage—and more in obtaining and maintaining certification. *See Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage); *see also In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying certification on the basis that Plaintiffs in a data breach case could not show that common issues predominated). Such cases underscore the magnitude and complexities of data breach litigation.

This matter presented even greater complexity than usual given that Defendant was a labor union. Before Plaintiffs filed this action, few courts had adjudicated a matter where a labor union's data was affected by a cyber-attack and the labor union was one of the defendants. *See Keown v. International Ass'n of Sheet Metal Air Rail Transp. Workers*, No. 23-cv-3570 (CRC), 2024 U.S. Dist. LEXIS 168789, *2 (D.D.C. Sep. 19, 2024) (data breach involving a union that was filed before the instant matter, but the motion to dismiss was decided after that same motion in this action). As such, no prior federal court had examined whether federal labor law preempted common law and statutory claims in a data breach class action. *Id.* (examining the preemption issue months after the decision in the instant matter); *Bell v. Michigan Council 25*, No. 246684, 2005 Mich. App. LEXIS 353, *10 n.1 (Mich. Ct. of App. Feb. 15, 2005) (rejecting labor law preemption argument in two sentence footnote). Any issue of first impression will always involve

complex research and require a greater commitment of resources than in a case where the legal path is well trodden.

### 3.    The risk of litigation

In addition to the risk faced by Plaintiffs at the pleadings stage of data breach litigation, Plaintiffs here faced the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant intended to oppose certification if the case proceeded. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017), and more recently in *In re Brinker Data Incident Litig*., No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021) (vacated in part *Green-Cooper v. Brinker Intl., Inc.,* 73 F. 4th 883 (11th Cir. 2023), where a class was certified over objection to plaintiffs' damage calculation. Additionally, class certification was granted in part and denied in part in *In Re Marriott Int. Inc. Customer Data Security Breach Litig.*, No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022) (vacated and remanded *In re Marriott Int. Inc.,* 78 F.4th 677 (4th Cir. 2023)) (reinstated on remand *In re Marriott Int. Inc. Customer Data Security Breach Litig.,* 345 F.R.D. 137 (M. Md. 2023) (certifying several classes in a data breach class action). While certification of additional consumer data breach classes may well follow, it still remains a substantial risk for Plaintiffs in this case. This over-arching risk simply puts a point on what is true in all class actions – class certification through trial is never a settled issue and is always a risk for the Plaintiffs and their Counsel.

Moreover, the theories of damages in data breach class actions remain untested at trial and appeal. As another court observed:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

*Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021). The instant matter exemplifies the untested nature of the law in this area due to the novel preemption issues it presented.

    This Action was undertaken and pursued on a contingent basis and represented a significant financial risk for Class Counsel. Barney Decl. ¶¶ 25-27. As Judge Posner of the Seventh Circuit Court of Appeals observed:

> A contingent fee must be higher than the fee for the same legal services as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders, but also for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of a conventional loan.

Posner, *Economic Analysis of Law*, 534, 567 (4th ed. 1992) (emphasis added). Risk of nonpayment is a relevant consideration in determining the reasonableness of a fee award. *In re Frontier Commc'ns Corp.*, No. 3:17-cv-01617-VAB, 2022 WL 4080324, at *44 (D. Conn. May 20, 2022) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.") (quoting *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400 (CM) (PED), 2010 WL 4537550, at *79 (S.D.N.Y. Nov. 8, 2020)). The potential of receiving little or no recovery in the face of increasing risk weighs in favor of the requested fee. *See Ching v. Siemens Indus.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."); *Brown v. 22nd Dist. Agric. Ass'n*, No. 15-CV-02578-DHB, 2017 WL 3131557,

at *8 (S.D. Cal. July 24, 2017) (recognizing that "class counsel was forced to forego other employment in order to devote necessary time to this litigation" and the substantial risk associated with taking the matter on a contingent basis warranted "an upward adjustment to the fee award"). If this matter proceeded in litigation, Plaintiffs and thus Class Counsel would bear considerable, additional risks, including the uncertainty of contested class certification, dispositive motions, and potential appeals, not to mention trial.

Thus, when Class Counsel took on this matter on a contingency basis, they accepted a greater risk that they might lose and never be compensated for their time. Consequently, the fee award should appropriately compensate Class Counsel for that risk.

### 4.    The quality of representation

As set forth in Class Counsel's firm resumes submitted in support of Plaintiffs' Unopposed Motion for Preliminary Approval (Dkt. Nos. 36-2, 36-3), Class Counsel has decades of experience prosecuting consumer class actions, including highly specialized data breach litigation. Barney Decl. ¶¶ 2-10. Class Counsel has been repeatedly recognized by courts as data breach specialists and for their work in prosecuting data breach class actions. Not only did Class Counsel's decades of combined experience lead directly to the excellent result achieved on behalf of the Settlement Class here, but it also permitted Class Counsel to accomplish that result efficiently and relatively quickly following the Court's resolution of Defendant's Motion to Dismiss. The quality and experience of Class Counsel supports the requested attorneys' fee award.

### 5.    The requested fee in relation to the settlement

Compensation of one-third of the Settlement Fund is consistent with the proportion of common funds awarded as fees in other class action settlements within the Second Circuit. *See,* e.g.,  *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-CV-8405 (CM) & 14-CV-8714 (CM), 2015 U.S. Dist. LEXIS 121574, at *57 n.11 (S.D.N.Y. Sept. 9, 2015) (collecting cases with fee awards of

approximately 30–33.33% of the total settlement value); *In re Payment Card Interchange Fee &
Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to
see 33% contingency fees in cases with funds of less than $10 million . . . ."); *Kiefer v. Moran
Foods, LLC*, No. 12-cv-756 (WGY), 2014 U.S. Dist. LEXIS 106924, at *51 (D. Conn. Aug. 5,
2014) (one-third of common fund "is reasonable and 'consistent with the norms of class litigation
in this circuit.'" (quoting *Aros v. United Rentals, Inc.*, No. 3:10-cv-73 (JCH), 2012 U.S. Dist.
LEXIS 104429, at *18 (D. Conn. July 26, 2012)); *City of Providence v. Aéropostale, Inc*., 2014
U.S. Dist. LEXIS 64517, at *60 (S.D.N.Y. May 9, 2014) (awarding 33% in attorneys' fees); *In re
Hi-Crush Partners L.P. Securities Litigation*, No. 12-cv-8557 (CM), 2014 U.S. Dist. LEXIS
177175, (S.D.N.Y. Dec. 19, 2014) (awarding "33 1/3% of the Settlement Amount" in attorneys'
fees; *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 481-83 (S.D.N.Y. 2013) (awarding class
counsel one-third of the settlement fund).

  Even very recent decisions support the conclusion that fees amounting to one-third of a
common fund are reasonable, with one court stating earlier this year: "Courts in this Circuit
routinely find that a percentage of fund award is appropriate and that a one-third percentage is fair
and reasonable." *Kohari v. MetLife Group, Inc*., No. 21-cv-6146 (KHP), 2025 U.S. Dist. LEXIS
7675, *35 (S.D.N.Y. Jan. 15, 2025) (approving fees of one-third of a fund); s*ee, e.g, Caccavale v.
Hewlett-Packard Co*., No. 20-cv-974-NJC-ST, 2025 U.S. Dist. LEXIS 47302, *30 (E.D.N.Y. Mar.
14, 2025) (preliminarily approving settlement where attorneys intended to seek up to one-third of
the fund in fees, holding that "[c]ourts in this District have approved fees as high as 33.5% from
comparable class settlement funds, finding that they are well within the applicable range of
reasonable percentage fund awards" (*quoting In re GSE Bonds Antitr. Litig*., 414 F. Supp. 3d 686,
695 (S.D.N.Y. 2019))); *Zimmerman v. Paramount Global*, No. 23-CV-2409 (VSB), 2025 U.S.

Dist. LEXIS 43617, *15 (S.D.N.Y. Mar. 11, 2025) (concluding in a preliminary approval award that "application for a fee award of an amount not to exceed one-third of the Settlement Fund, plus reasonable out-of-pocket costs . . . is consistent with what other courts in this District have approved" (internal quotations omitted)); *Silva v. Consol. Scaffolding, Inc*., No. 1:24-cv-04591, 2024 U.S. Dist. LEXIS 168162, at *5 (S.D.N.Y. Sept. 18, 2024) ("In light of the *Goldberger* factors, the Court finds that the one-third contingency fee in this case is appropriate").[2]

In addition, awarding Class Counsel "a one-third fee also aligns with those awarded by other courts in data breach class action cases" around the country. *Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, 2024 U.S. Dist. LEXIS 230685, *21 (D. Kan. Dec. 19, 2024) (awarding one-third fee, and collecting data breach cases from around the country); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, No. 1:22-CV-296, 2024 U.S. Dist. LEXIS 113914, *42 (M.D.N.C. June 27, 2024) (awarding one-third of a common fund as attorneys' fees in data breach action because this amount was "comparable to awards in other data privacy class actions"); *Thomsen v. Morley Cos.*, No. 1:22-cv-10271, 2023 U.S. Dist. LEXIS 84005, *7 (E.D. Mich. May 12, 2023) (holding that attorneys' fee of one-third of the common fund was "apt because it reflects counsel's specialization in data breaches and simplifies the billing"); *see also Barletti v. Connexin Software, Inc.*, No. 2:22-cv-04676-JDW, 2024 U.S. Dist. LEXIS 43851, *16 (E.D. Pa. Mar. 13, 2024) (preliminarily approving data breach class action settlement which created a $4,000,000 fund, and finding that attorney fees of one-third that amount were "squarely within the range of awards found to be reasonable").

---

[2] In fact, one decision that reviewed 289 class actions settlements found an "average attorney's fee percentage [of] 31.31%" and a median value "that turns out to be of one-third." *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001).

### 6.      <u>Public Policy Considerations</u>

Public policy considerations also "favor[] a significant award of attorneys' fees above what Class Counsel would have charged on an hourly fee basis," *In re Capital One Consumer Data Security Breach Litig.*, No. 1:19-md-2915 (AJT/JFA), 2022 WL 17176495, at *5 (E.D. Va. Nov. 17, 2022), because attorneys should be incentivized to bring common fund cases like this Action where the alternative (thousands of individual small-dollar claims) would not justify the expense of separate litigation. *See id.* ("The class action device, when not abused, serves an important public interest in securing remedies for consumers who, for economic and practical reasons, would be unable to recover on an individual basis."). "There is also commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51. Class Counsel's fees "should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Colgate-Palmolive*, 36 F. Supp. 3d at 352. The Settlement and attorneys' fees requested do not raise serious public policy concerns, and no Settlement Class Members have presently objected to the requested fee. Therefore, on balance, public policy also supports approval of the requested award.

### 7.      <u>Lodestar Cross Check</u>

Consistent with *Goldberger*, courts applying the percentage of the fund method may also conduct a "cross-check" by calculating counsel's lodestar (multiplying the hours reasonably expended against a reasonable hourly rate) and applying an appropriate multiplier. *Id.*

Class Counsel's lodestar is $338,361.40, reflecting 489.1 hours of attorney and paralegal time. Barney Decl. ¶ 32. Awarding the requested fee of $2,000,000 results in a multiplier of 5.91, *id.* ¶ 33, which is consistent with lodestar multipliers awarded in this Circuit. Courts routinely find fees reasonable where the percentage of recovery method leads to a lodestar multiplier between 2

and 6 and even as high as 8. *See Fleisher v. Phoenix Life Ins. Co., Civil Action*, No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574, *61 (S.D.N.Y. Sep. 9, 2015) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar." (quoting *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623-24 (S.D.N.Y 2012))); *Yuzary v. HSBC Bank USA, N.A.*, No.12-cv-3693, 2013 U.S. Dist. LEXIS 144327, at *29 (S.D.N.Y. Oct. 2, 2013) (awarding multiplier of 7.6); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (awarding multiplier of 6.3 and noting that "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *7 (D. Conn. July 31, 2014) (collecting cases that have approved awards with a lodestar multiplier of up to eight times the lodestar).

Even though the proposed lodestar multiplier is on the higher side of the average, it is still within the range typically awarded in this Circuit. Furthermore, "[t]he multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *60. Here this matter presented novel issues in the data breach context (thereby increasing the risk of no recovery), the results achieved by Class Counsel were outstanding for the class, and Class Counsel was fully preparing to take this matter to trial, if necessary, despite working on a contingent basis (as shown by its undertaking significant discovery efforts and retaining an expert). These factors, when coupled with the efficiency that Class Counsel was able to employ due to their past data breach experience, all support application of a higher multiplier in this action.

### B.     Class Counsel's Expenses Are Reasonable and Should Be Reimbursed

Class Counsel's efforts have resulted in exceptional benefits to the Settlement Class. In doing so, Class Counsel incurred out-of-pocket expenses in the aggregate amount of $18,513,21

for filing fees, mediation costs, and necessary travel costs. *See* Barney Decl. ¶ 47.  Under Federal Rule of Civil Procedure 23(h), the court may also award "nontaxable costs that are authorized by law or by the parties' agreement." The requested costs are reasonable in light of the nature of the action and the tasks that needed to be performed.  *See, e.g., Kiefer*, 2014 WL 38882504, at *55 (awarding reimbursement of litigation expenses that included court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiff's share of mediation fees).

### C.    The Requested Service Awards Should Be Approved

Plaintiffs respectfully request approval of $3,500.00 Service Awards to the Class Representatives. Service awards to representative plaintiffs in class action cases "compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Simerlein v. Toyota Motor Corp.*,  No. 3:17-cv-1091 (VAB), 2019 WL 96742, at *76 (D. Conn. June 10, 2019) (quoting *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001)). These awards are designed to reimburse representative plaintiffs who "take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action." *Id.* (quoting *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010)). "Courts in this Circuit frequently approve incentive awards of various amounts in many types of class actions, with determinations of whether the proposed amounts are appropriate being based, somewhat, on assessments of the burdens a representative plaintiff took on by participating in the case." *Kemp-DeLisser v. St. Francis Hosp. & Med. Ctr.*, No. 15-cv-1113 (VAB), 2016 WL 6542707, at *18 (D. Conn. Nov. 3, 2016) (collecting cases). The $3,500.00 Service Awards sought by Plaintiffs fall near the low end of the typical service awards approved by courts in this Circuit. *McLaughlin v. IDT Energy*, No. 14-cv-417 (ENV) (RML), 2018 WL 3642627, at *20

(E.D.N.Y. July 30, 2018) ("Courts in this circuit regularly approve service awards, ranging from as low as $1,000 to as high as $25,000, in consumer class action settlements; generally, however, award between $1,000 and $10,000 are more typical.") (collecting cases).

Here, Plaintiffs agreed to serve as Class Representatives and have been actively involved in the Litigation. Barney Decl. ¶ 48. Plaintiffs pursued the interests of the Settlement Class by undertaking the responsibilities attendant to serving as class representatives, including, without limitation, periodically conferring with Class Counsel, providing relevant documents and information, reviewing pleadings and other documents in the case, and discussing and approving the Settlement. *Id*. The information they provided Class Counsel was critical in determining the legal claims to be asserted and the scope of damages alleged. Accordingly, given Plaintiffs' time and efforts in supporting the litigation, combined with the risks and burdens of serving as Class Representatives, they should each be granted a $3,500.00 Service Award.

## V.    CONCLUSION

For all the foregoing reasons, the Court should grant Plaintiffs' Motion for Application for Attorneys' Fees, Costs, and Service awards.


DATED: March 28, 2025                    */s/ Mason A. Barney*
                                          Mason A. Barney
                                          (S.D.N.Y Bar Roll No. MB7225)
                                          Tyler J. Bean
                                          **SIRI & GLIMSTAD LLP**
                                          745 Fifth Avenue, Suite 500
                                          New York, New York 10151
                                          Tel: (212) 532-1091
                                          E: mbarney@sirillp.com
                                          E: tbean@sirillp.com

                                          John J. Nelson
                                          **MILBERG COLEMAN BRYSON**
                                          **PHILLIPS GROSSMAN, PLLC**
                                          280 S. Beverly Drive
                                          Beverly Hills, CA 90212

Tel.: (858) 209-6941
jnelson@milberg.com

Vicki J. Maniatis
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, NY 11530
Tel.: (865) 412-2700
vmaniatis@milberg.com

*Counsel for the Settlement Class*